COMMONWEALTH vs. ARMAND R. THERRIEN.

Norfolk.     September 13, 1976. — October 14, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Charge to jury.   *Words,* "Reasonable doubt."

At a criminal trial there was no error in the judge's use of prosecution evidence to illustrate portions of his charge where there was no such preponderance of attention to the prosecution's case in the charge taken as a whole as might mislead the jury to the defendant's prejudice. [205-207]

The language of a charge to the jury on the subject of reasonable doubt at a criminal trial, in the context of the charge in its entirety, was not prejudicial to the defendant. [207-209]

INDICTMENTS found and returned in the Superior Court on June 2, 1975.

The cases were tried before *Brogna, J.*

*Gerald Alch* for the defendant.
*Robert B. Russell,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J.   The defendant Armand R. Therrien was convicted of murder in the first degree of Army Captain John Oi and police Officer William Sheehan; of assault with intent to murder police Officer Robert O'Donnell and assault and battery upon him with a dangerous weapon; and of unlawful possession of a weapon — all the crimes having occurred during a single episode on February 11, 1975. The defendant takes the present appeal under G. L. c. 278, §§ 33A-33G, and urges on the court claimed errors in the judge's instructions to the jury.[1]

The prosecution's version of the events, evidently credited by the jury, is for the most part epitomized in the testimony of Officer O'Donnell. On the evening of February 11 he and Officer Sheehan, driving in a cruiser on Canton Street in Westwood, came upon a car, bearing Oregon license plates, parked on the side of the road. The cruiser drew up. O'Donnell saw a man (Oi) slumped over the wheel of the car and another (the defendant) next to him in the passenger seat. The officers parked the cruiser, alighted, and went toward the car; the defendant at the same time left the car, moved toward the officers, and said his friend was sick and he was going to drive him home. As all three neared the car, O'Donnell looked within and saw that Oi's face was bloodied. The defendant called out to the officers and as they turned toward him he opened fire with a gun — a .38 caliber Smith and Wesson snub-nosed revolver (known to have been in the defendant's possession earlier that evening). Sheehan was struck by two bullets from the defendant's gun and died within minutes. O'Donnell was grazed and stunned by the defendant's first shot, but nevertheless managed in the next few

---

[1] We do not deal with four assignments of error which were not argued in the briefs and are considered waived. *Commonwealth* v. *Underwood,* 358 Mass. 506, 512 (1970). S.J.C. Rule 1:13, as amended, 366 Mass. 853 (1975).

moments to wrest the defendant's gun from him, draw his own police revolver, shoot the defendant with that weapon, and capture him. O'Donnell sustained two other wounds, at least one of which was caused by a discharge from Sheehan's gun. Shortly before the officers' arrival, Oi had received a bullet in the head from the defendant's weapon; he died later that evening at a hospital to which he was removed. A possible motive for the murder of Oi was collection of an insurance policy on the life of Oi taken out in connection with a restaurant venture undertaken by Oi, the defendant, and two others.

The defendant told a quite different story from the witness stand. While driving the car, Oi lost his temper and beat the defendant seated alongside — apparently Oi used his arm — until the defendant was unconscious. When the defendant began to recover he found himself lying near the car, now parked, with a police officer, supposedly Sheehan, leaning over him and asking how he felt. Then the defendant heard an argument with racial epithets, and a gunshot. As Sheehan moved away, the defendant heard further argument in which someone kept "hollering about an accident." He saw the two officers fire on each other, O'Donnell presumably using the defendant's gun, which O'Donnell had taken from Oi, who in turn had taken it from the defendant while he was unconscious. The defendant attacked and wrestled to the ground the officer next to him, O'Donnell. During this struggle, the defendant's gun in O'Donnell's hand went off once. The struggle resumed; as the two disengaged, O'Donnell drew his own revolver and shot the defendant.

1. The defendant assigns as error, based on due exception, that the judge, in illustrating or elucidating the meaning of several passages of his charge, drew on the evidence supporting the prosecution's case but did not make corresponding or balancing references to the defendant's evidence.[2] The result, according to the defendant, was that

---

[2] This was also made the subject of a motion for a new trial which the trial judge denied.

the charge focused unduly on the prosecution's theory and might thus have led the jury to believe that the judge was himself convinced of the defendant's guilt.[3] See *Starr* v. *United States*, 153 U.S. 614, 624-626 (1894); *United States* v. *Dellinger*, 472 F.2d 340, 385-386 (7th Cir. 1972), cert. denied, 410 U.S. 970 (1973); *United States* v. *Nazzaro*, 472 F.2d 302, 303-304 (2d Cir. 1973).

We think the criticism is much overdrawn. The judge did not attempt a comprehensive or complete analysis of all the evidence, nor was he bound to do so. "While a defendant, in a criminal case, is entitled to have the issues of fact clearly presented to the jury and the law applicable thereto carefully explained, the method and extent of the charge must be left to the discretion of the judge. It is not to be expected that he shall discuss every subsidiary fact and possible inference." *Commonwealth* v. *Greenberg*, 339 Mass. 557, 584 (1959).[4] In the present case the judge stated what would be required for conviction of each of the several crimes, with some allusions to the evidence; but he also alluded to the defendant's exculpatory version of the facts. It is to be noted, on the one hand, that the defendant was to some extent merely negating the propositions of fact as tendered and sought to be proved by the prosecution, and a negative does not lend itself readily to illustration; on the other hand, any references to the defendant's theory of the case must steer clear of the shoal of intimating that the jury must accept that theory in order to acquit him. See *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). Considering the charge in its entirety (see *Commonwealth* v. *Gibson*, 368 Mass. 518, 527-528 [1975]) and in relation to the whole record, we are persuaded that there was no such preponderance of attention to the prosecution's case as might mislead the jury

---

[3] There had evidently been an unrecorded discussion among counsel and the judge, before the judge commenced to charge, about the need for balance in the allusions to the evidence.

[4] See also *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971); *Commonwealth* v. *Monahan*, 349 Mass. 139, 170-171 (1965); *Commonwealth* v. *Gliniecki*, 339 Mass. 464, 469 (1959); *Commonwealth* v. *Polian*, 288 Mass. 494, 499 (1934).

to the defendant's prejudice. The judge did not forfeit his impartiality or "impose on a jury his own notion of which inferences [were] reasonable." *United States* v. *DeLoach,* 504 F.2d 185, 190 (D.C. Cir. 1974). We should add that the judge warned explicitly in his instructions that the jury were not to give "any more credence to a particular piece of evidence that I may happen to mention than [to] any other evidence . . . ."

2. The defendant complains of certain elements of the judge's charge regarding the prosecution's burden of proving guilt beyond a reasonable doubt. In fact, the judge invoked and laid stress on this burden no fewer than fifteen times as he dealt successively with the indictment. He correctly described or defined the burden as calling for proof to a high degree of probability — "you must be sure, sure to a moral certainty." This is the heart of the matter. The judge, however, went on to make two embellishments.

He said, "I like to think of that kind of certainty that is required by the words 'beyond a reasonable doubt,' that when the case is all over, no matter which way it goes, that the twelve of you will be able to live with each other and yourself." The defendant suggested to the judge that this might encourage the jury to reach for an emotional rather than a rational verdict. We need not pause on the point because the judge in response to the criticism added a curative remark: "Now, I in no way intended to give you the impression that by that expression I meant anything emotional, anything based on emotion or sympathy. I was using it just as another way of expressing the type of sureness that is required in the term beyond a reasonable doubt." The defendant made no further objection, nor did he record an exception, so the point is, strictly, unavailable on appeal (see *Commonwealth* v. *McLeod,* 367 Mass. 500, 500, 501-502 [1975]; *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 [1972]; *Commonwealth* v. *Foley,* 358 Mass. 233, 236-237 [1970]);[5] but if the attempt to rewarm it here

---

[5] The defendant did purport to assign error as to the original and supplemental instruction on the matter.

were permitted, it would fail because the judge's later statement redirected the jury's attention to the merits; that statement, moreover, is to be taken together with the exhortations to the jury in the charge to base their verdicts on their common sense appraisal of the evidence.

The judge said in effect that if the evidence gave rise to a reasonable doubt as to the defendant's guilt, he must be acquitted; but there was a further remark that the jury should acquit if they had "serious unanswered questions" about the defendant's guilt. No objection was taken to the statement,[6] which is perhaps a true gauge of the importance counsel attached to it at the time. It is suggested on this appeal — again quite belatedly and irregularly — that the quoted language is harder on the defendant than the standard "reasonable doubt." This is not clear even if the statement is considered in isolation from the rest of the charge. But in the context of the repeated references to "reasonable doubt" and the correct description of the prosecution's burden elsewhere in the charge, the questioned statement seems to us nonprejudicial; it is highly likely that it would be taken as another way of putting the basic proposition and as not altering the meaning.

Although we are well persuaded that there was no substantial error in the instructions, we are frank to say that we deprecate the use of these freehand embellishments of the standard charge, just as we have had all too frequent recent occasion to deprecate other such embellishments[7] which can only create uncertainty and breed needless appeals. "Whatever their value in other areas of the law in adding zest or currency to otherwise all too predictable proceedings, personal variations on elements such as reasonable doubt seldom represent sound judicial practice." Coffin, J., in *United States* v. *MacDonald,* 455 F.2d 1259,

---

[6] Nor was there any assignment of error on the point.

[7] See, e.g., *Commonwealth* v. *Fielding, ante,* 97, 116 (1976); *Commonwealth* v. *Gilday,* 367 Mass. 474, 497-498 (1975); *Commonwealth* v. *Coleman,* 366 Mass. 705, 712 (1975); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12 (1974).

1263 (1st Cir.), cert. denied, 406 U.S. 962 (1972). We repeat with emphasis what was said in *Commonwealth* v. *Gerald*, 356 Mass. 386, 390 (1969): "Explanation of 'reasonable doubt,' we think, is usually best made in close reliance on the time-tested language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320."

3. Although adjuring us in argument to give the defendant some discretionary relief under G. L. c. 278, § 33E, the defendant's counsel does not point to any specific basis in the record for such action, unless it be the claimed errors in the charge. As noted, if procedural bars to their consideration were waived under § 33E, these claims would still deserve to fail. For the rest, the jury could well accept the Commonwealth's version of the facts as recounted above, and there is no ground apparent to us in the record for interfering with the verdicts or judgments.

*Judgments affirmed.*