COMMONWEALTH vs. KEVIN P. WOOD.

Norfolk.    March 8, 1979. — April 24, 1979.

Present: HALE, C.J., GRANT, & DREBEN, JJ.

*Practice, Criminal*, Instructions to jury, Reasonable doubt, Judicial discretion. *Evidence*, Other offense, Judicial discretion.

At a criminal trial statements in the judge's charge to the jury that reasonable doubt is "that doubt which amounts to a moral certainty" and that "if . . . you are convinced of the defendant's guilt to a moral certainty, you must find him guilty," in the absence of corrective language elsewhere in the charge, amounted to error resulting in a substantial risk of a miscarriage of justice and necessitated reversal of convictions notwithstanding the failure of trial counsel to note an exception or otherwise call the error to the judge's attention. [457-458]

At the trial of indictments charging kidnapping and rape, no abuse of discretion appeared in the admission of the victim's testimony that, immediately after the alleged rape, the defendant stated to her that he had been imprisoned previously for rape, where the statement was relevant to the charges as showing the victim's state of mind and fear of the defendant and as an admission in the course of an apology, where it appeared that the judge had considered the potential prejudicial effect of the testimony, and where the judge's express instructions limited the jury's consideration of the defendant's statement. [459-460]

INDICTMENTS found and returned in the Superior Court on April 6, 1977, and June 20, 1977, respectively.

The cases were tried before *Chmielinski*, J.

*Michael L. Altman* for the defendant.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his convictions on indictments charging him with rape (G. L. c. 265, § 22) and kidnapping (G. L. c. 265,

§ 26).[1] He assigns as error (1) the judge's charge to the jury on the meaning of reasonable doubt and (2) the admission of testimony indicating that the defendant had previously been imprisoned for rape. We summarize the facts as they could have been found by the jury.

At about 1:00 P.M. on March 26, 1977, the defendant stopped his pickup truck next to a young woman (the victim) who was walking along the road. He asked her if she wanted a ride. She declined and continued walking. He followed her as she walked and made other offers for her to ride, all of which she declined. The defendant then left the truck and ran behind her. She turned and observed him holding a tire iron over his head. He took her arm and ordered her into the front seat of the truck. The defendant drove the victim to a secluded spot, where he forced her to submit to anal intercourse and to perform fellatio upon him. Afterwards the defendant placed the tire iron, which had been beside him on the seat, on the floor between the seat and the left side door. He talked to the victim for a short time, and, among other things, told her that "he didn't know why he had done what he did." He said that he had a seven-year old daughter and gave her name. He said that "he had been in Walpole prison for rape before." He also told her that he had beaten up his girlfriend and had "broken open her head and broken her hand. And she had said to police that he raped her but he didn't rape her." Finally, the defendant drove the victim back to a populated area, and after they had talked for ten minutes, during which time he told her his name, he allowed her to leave. She walked to a variety store and attempted unsuccessfully to call her boyfriend. She then walked to a grocery store, called her boyfriend from there, and told him of the rape. She knew that a police station was nearby, but she did not go there to report the

---

[1] The defendant's conviction of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) was placed on file with his consent.

crime until later that day, when accompanied by her father.

1. The defendant argues that the judge committed error in his instruction to the jury concerning the meaning of reasonable doubt.[2] He contends that the charge was erroneous because at one point it framed the definition of reasonable doubt in a way that implied that the burden of proof was on the defendant. We note that the defendant failed to except to the charge on this basis,[3] so he must be taken to have waived his right to appellate review of this issue (*Commonwealth* v. *Therrien*, 371 Mass. 203, 207 [1976]; *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. 172, 178 [1978]) except to the extent that there may be a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

The defendant refers to the statement in the charge that reasonable doubt is "that doubt which amounts to a moral certainty, it's a doubt that's reached after due deliberations, after careful consideration of all the evidence." That phrase would, as the defendant contends, give the jury the impression that they were required to

---

[2] The judge charged, "What is reasonable doubt? Well, reasonable doubt is not merely a whim, a caprice, some means of getting somebody off the hook. It is that doubt which amounts to a moral certainty, it's a doubt that's reached after due deliberations, after careful consideration of all the evidence and, if after such careful deliberation, after soul searching, if you will, if then, ladies and gentlemen, you are convinced of the defendant's guilt to a moral certainty, you must find him guilty. If there is no such moral certainty, you must acquit him. The defendant is entitled to the benefit of a reasonable doubt."

"Getting back to reasonable doubt again, as I said, the doubt must be reasonable. Now, in every case, every criminal case that I have ever sat on, there is bound to be some doubt, some small doubt, perhaps because it is impossible for the Commonwealth to prove its case with mathematical certainty. You can't come in and say, well two and two is four and here it is. There's always bound to be some small doubt but, as I said before, the doubt must be one based on reason."

[3] At the conclusion of the judge's charge the defendant objected and excepted to a portion of the charge referring to the impossibility of proof to "mathematical certainty," but he does not now argue that this portion of the charge was incorrect.

have a moral certainty as to doubt if they were to acquit rather than that they have a moral certainty as to guilt in order to convict. Compare *Dunn* v. *Perrin*, 570 F.2d 21, 24 (1st Cir.), cert. denied, 437 U.S. 910 (1978). However, it is not the impression that one small part of the charge might leave with the jury but the effect of the charge as a whole which is of concern to us. *Commonwealth* v. *Pettie*, 363 Mass. 836, 843 (1973). *Commonwealth* v. *Bjorkman*, 364 Mass. 297, 308 (1973).

There is no question here but that the error was the result of a slip of the tongue which would have been corrected had it been called to the judge's attention. Counsel for the defendant[4] has the duty to call possible errors in the charge to the judge's attention and to except when the judge declines to give corrective instructions. Had an exception been noted on this point, we would have reversed because we could not have said that the error, which was of constitutional dimension because it in effect shifted the burden of proof (*In re Winship*, 397 U.S. 358, 364 [1970]; *Dunn* v. *Perrin*, 570 F.2d at 25), was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U.S. 18, 22 (1967). *Commonwealth* v. *Hanger*, 377 Mass. 503, 510 (1979). As we have noted, our review in this case is limited to a determination whether there exists a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. at 564. We have examined the record and are of the opinion that the risk of a miscarriage of justice is indeed substantial because there was nothing elsewhere in the charge to contradict the misstatement or to overcome the impression as to the burden of proof that the charge might have left with the jury. The dual use of the standard of "moral certainty" could well have left the jury with the erroneous impression that it would be as difficult to acquit as to convict. Notwithstanding the strength of the case against the defendant, the judgments must be reversed.

---

[4] Present counsel was not trial counsel. The prosecutor, of course, should also point out errors of which he is aware.

2. As the issue is likely to arise at a retrial, we consider the defendant's argument that the judge erred in admitting testimony that the defendant had said that at a time prior to this incident he had been imprisoned at Massachusetts Correctional Institution Walpole for rape. He maintains that the probative value of the evidence was outweighed by the danger that the jury would be prejudiced against him by the knowledge that he had at least once before been convicted of a crime identical to the one charged here. We disagree.

Evidence of prior crimes or jail terms is not admissible to prove the character of the defendant, but it can be introduced for other relevant purposes. *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). Compare Fed.R.Evid. § 404(b). The judge correctly ruled that the statement was relevant to show the state of mind of the victim which was material to the issue of consent on the kidnapping charge.[5] Compare *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972); *Commonwealth* v. *Clark*, 3 Mass. App. Ct. 481, 486 (1975). Though relevant, the statement also was prejudicial, referring as it did to a sentence for rape, one of the charges involved here. In such a situation, the trial judge must balance the probative value of the testimony against the potential prejudice that might result from its admission (*Commonwealth* v. *Chalifoux*, 362 Mass. at 816) and then, based on this

---

[5] The questioned evidence was also relevant to the rape charge in the sense that it showed reasons for the victim's fear of the defendant, which would explain her delays in departing from the truck and in contacting the police, points which were forcefully brought to the jury's attention in the defendant's closing argument and regarding which he had extensively cross-examined the victim. Moreover, the evidence taken with other statements that he made was relevant as the jury could have found it to be an apology for the defendant's acts and an admission by him that the victim had not consented to them. *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 4 (1972). The questioned evidence was also relevant to complete the description of the entire episode. Compare *Commonwealth* v. *Chalifoux*, 362 Mass. at 816.

balance, exercise his discretion to admit or exclude the evidence. *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. at 3. *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. at 177. See *Commonwealth* v. *Caine*, 366 Mass. 366, 371 (1974). If the question were ours to decide in the first instance, we would have excluded the testimony, but we cannot say on the record before us that the judge abused his discretion by admitting it. We do not agree that the judge failed to consider the potential prejudicial effect of the testimony merely because he did not verbalize his thought processes. The defendant twice argued the prejudice of the testimony to his case. He conceded its relevance but pointed out that it added little to the Commonwealth's proof. The judge made his ruling following and in light of those arguments. We also note that the judge expressly charged the jury that they should limit their use of this testimony to the determination of the victim's state of mind. Such a limiting instruction does much to mitigate any prejudice that could have resulted from the admission of the testimony. *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. at 4.

*Judgments reversed.*