## COMMONWEALTH *vs.* KEVIN P. WOOD.

Norfolk. January 8, 1980. — May 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Judicial discretion. *Evidence,* Other offense, Judicial discretion.

A judge's erroneous instructions with respect to the definition of "reasonable doubt" as "that doubt which amounts to a moral certainty" were so prejudicial to the defendant as to create a substantial risk of a miscarriage of justice. [547-551]

At a rape trial, the judge did not abuse his discretion in admitting evidence of the defendant's statements to the victim concerning his prior conviction for rape. [551]

INDICTMENTS found and returned in the Superior Court on April 6, 1977, and June 20, 1977, respectively.

The cases were tried before *Chmielinski,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael L. Altman* for the defendant.

*Charles J. Hely,* Assistant District Attorney (*Sydney Hanlon,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. Following his convictions[1] on indictments charging rape and kidnapping, Kevin P. Wood appealed, pursuant to G. L. c. 278, §§ 33A-33G, assigning as error (1) the charge to the jury defining reasonable doubt, and (2) the

---

[1] Wood's additional conviction of assault by means of a dangerous weapon was filed with his consent. Cf. *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975). On the rape conviction, the trial judge sentenced Wood to life at the Massachusetts Correctional Institution at Walpole, with this sentence to begin on and after a prior sentence Wood was already serving. On the kidnapping conviction, Wood was sentenced to nine to ten years at the same institution, to begin on and after his life sentence.

admission of testimony indicating that he had previously been imprisoned for rape. The Appeals Court reversed, *Commonwealth* v. *Wood,* 7 Mass. App. Ct. 455 (1979), and we granted the Commonwealth's petition for further appellate review. We agree with the Appeals Court that the judgment must be reversed, and that a new trial is required.

The Appeals Court concisely summarized the facts as they might have been found by the jury as follows. "At about 1 P.M. on March 26, 1977, the defendant stopped his pickup truck next to a young woman (the victim) who was walking along the road. He asked her if she wanted a ride. She declined and continued walking. He followed her as she walked and made other offers for her to ride, all of which she declined. The defendant then left the truck and ran behind her. She turned and observed him holding a tire iron over his head. He took her arm and ordered her into the front seat of the truck. The defendant drove the victim to a secluded spot, where he forced her to submit to anal intercourse and to perform fellatio upon him. Afterwards the defendant placed the tire iron, which had been beside him on the seat, on the floor between the seat and the left side door. He talked to the victim for a short time, and, among other things, told her that 'he didn't know why he had done what he did.' He said that he had a seven-year old daughter and gave her name. He said that 'he had been in Walpole prison for rape before.' He also told her that he had beaten up his girlfriend and had 'broken open her head and broken her hand. And she had said to police that he raped her but he didn't rape her.' Finally, the defendant drove the victim back to a populated area, and after they had talked for ten minutes, during which time he told her his name, he allowed her to leave. She walked to a variety store and attempted unsuccessfully to call her boyfriend. She then walked to a grocery store, called her boyfriend from there, and told him of the rape. She knew that a police station was nearby, but she did not go there to report the crime until later that day, when accompanied by her father." 7 Mass. App. Ct. 455, 456-457 (1979).

1. *Definition of reasonable doubt.*  Wood argues that the trial judge's definition of reasonable doubt constitutes reversible error.  Wood failed, however, to object at trial to that portion of the charge he now contends was erroneous.  In the absence of a valid objection and exception, the sole question before us is whether the charge as given created "a substantial risk of a miscarriage of justice."  *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).[2]  For essentially the same reasons as advanced by the Appeals Court, we conclude the charge in this case did create such a risk.

The judge defined reasonable doubt, in part,[3] as "that doubt which amounts to a moral certainty, it's a doubt that's reached after due deliberations, after careful consideration of all the evidence . . . ."  Proof beyond a reasonable doubt may properly be equated to proof of guilt to a moral certainty.  *Commonwealth* v. *Watkins*, 377 Mass.

---

[2] The sound policy behind denying normal appellate review absent a valid exception is rarely more clearly demonstrated than in the present case, where a timely objection certainly would have permitted the judge to correct his misstatements.  There is nothing, however, in the record before us to indicate that defense counsel deliberately refrained from objecting in the belief that the error involved was so egregious as to guarantee reversal on appeal under our "rarely used" power to reverse on the showing of a substantial risk of a miscarriage of justice.  *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

[3] The judge attempted to define reasonable doubt at two separate points in his charge.  He introduced the subject as follows: "What is reasonable doubt?  Well, reasonable doubt is not merely a whim, a caprice, some means of getting somebody off the hook.  It is that doubt which amounts to a moral certainty, it's a doubt that's reached after due deliberations, after careful consideration of all the evidence and, if after such careful deliberation, after soul searching, if you will, if then, ladies and gentlemen, you are convinced of the defendant's guilt to a moral certainty, you must find him guilty.  If there is no such moral certainty, you must acquit him.  The defendant is entitled to the benefit of a reasonable doubt."  Later, he added, "Getting back to reasonable doubt again, as I said, the doubt must be reasonable.  Now, in every case, every criminal case that I have ever sat on, there is bound to be some doubt, some small doubt, perhaps because it is impossible for the Commonwealth to prove its case with mathematical certainty.  You can't come in and say, well two and two is four and here it is.  There's always bound to be some small doubt, but, as I said before, the doubt must be one based on reason."

385, 388, cert. denied, 442 U.S. 932 (1979), and cases cited. However, the quoted portion of the charge is "the exact inverse of what it should have been." *Dunn* v. *Perrin,* 570 F.2d 21, 24 (1st Cir.), cert. denied, 437 U.S. 910 (1978). Nevertheless, "[t]o determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Commonwealth* v. *Watkins, supra.* See *Commonwealth* v. *Garcia,* 379 Mass. 422, 441 n.12 (1980); *Commonwealth* v. *Pettie,* 363 Mass. 836, 843 (1973). The Commonwealth contends that, viewed in this light, the judge's misstatements were entirely corrected by his further instruction to the effect that in order to convict, the jury must be convinced of the defendant's guilt to a "moral certainty." See note 3, *supra.* The charge is therefore said to contain no error. We disagree.

This is not a case where the flawed portions of the charge represent "isolated inadequacies" corrected by a proper "emphasis of the necessity of moral certainty of guilt." *Commonwealth* v. *Williams,* 378 Mass. 217, 233 (1979). The improper instructions here lie at the core of the judge's definition of reasonable doubt, and cannot be described as doubtful "embellishments," *Commonwealth* v. *Therrien,* 371 Mass. 203, 207 (1976), on a distinct and correct definition constituting "the heart of the matter." *Id.* Simultaneously and with equal emphasis, the charge required the jury to convict in the absence of "doubt which amounts to a moral certainty" and to acquit absent conviction of guilt to the same "moral certainty." We have, of course, no way of determining which of these conflicting instructions the jurors may have followed. At worst, the charge could well have led the jury to believe that the degree of certainty required to convict was far lower than that properly demanded in a criminal case. At a minimum, these instructions must have left the jury badly confused. "[T]he trial judge has the duty to state the applicable law to the jury clearly and correctly." *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974). See *Commonwealth* v. *Canon,* 373 Mass. 494, 514-515

(1977) (Abrams, J., dissenting on other grounds). The charge was error.[4]

The remaining question is whether, on the facts of this case, this error in the charge created a substantial risk of a miscarriage of justice. The Commonwealth argues that no such risk exists since the charge repeatedly assigned to the prosecution the burden of proof. Such a proper assignment of the burden of proof is meaningless, however, if a charge trivializes the quantum of proof required. See note 4, *supra*.

We conclude that the error in the charge in this case threatened so dramatically to reduce the Commonwealth's required "quantum of proof," *Connolly* v. *Commonwealth*, 377 Mass. 527, 538 (1979), as to create a substantial risk of a miscarriage of justice. Unlike the error in *Commonwealth* v. *Garcia*, 379 Mass. 422 (1980), the error in this charge cannot be said to have simply "'detracted'" from the Commonwealth's burden of proof. *Commonwealth* v. *Garcia*, *supra* at 440. The charge here did not shift the quantum of proof required "in the direction of the 'preponderance of the evidence' standard." *Id.* at 441. Rather, the error here may have virtually eliminated the Commonwealth's burden altogether, by suggesting that conviction would be appropriate unless the jurors were convinced of doubt to a "moral certainty."

Finally, a proper definition of "[t]he reasonable doubt standard is most crucial in cases where central facts . . . are at issue, and credibility plays a key role." *Commonwealth* v. *Garcia, supra* at 441. We are therefore not persuaded by the Commonwealth's additional argument that there is no

---

[4] We find to be without merit the Commonwealth's further argument that the charge as a whole was not error because other aspects of the charge repeatedly fixed the burden of proof on the Commonwealth. A proper charge must accurately convey to the jury both the "burden and quantum of proof." *Connolly* v. *Commonwealth*, 377 Mass. 527, 538 (1979). Hypothetically, the Commonwealth's argument would sanction a charge which repeatedly fixed on the Commonwealth the burden of proving each element of a crime beyond a reasonable doubt, and then incorrectly defined proof beyond a reasonable doubt as equivalent to proof by a fair preponderance of the evidence.

risk of a substantial miscarriage of justice here because the evidence against Wood is overwhelming. The strength of the Commonwealth's evidence turned on the credibility of the victim. While Wood did not take the stand, he offered testimony suggesting that the kidnapping and rape could not have taken place within the time period described in the Commonwealth's evidence. The defendant also relied heavily on an attempt to discredit the victim through cross-examination. While the victim's testimony was very convincing, and was confirmed in many respects by other evidence, there was no physical evidence of rape and no testimony other than that of the victim herself (or the testimony of others based entirely on the victim's fresh complaints), which would have justified the jury in convicting Wood on either the rape or the kidnapping indictment. In these circumstances we cannot assume that our view of the credibility of the victim would be the same as that of the jurors. See *Commonwealth* v. *Dickerson*, 372 Mass. 783, 798, 800-802 (1977) (Quirico, J., concurring). See also, *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-129 (1977). Cf. *Commonwealth* v. *Garcia*, 379 Mass. 422, 442 (1980) ("overwhelming evidence of guilt").

Since there exists serious doubt as to whether this defendant was prejudiced by the trial judge's instructions to the jury, this doubt must be resolved in the defendant's favor. Thus we are compelled to reverse these convictions.

The Commonwealth suggests that such a reversal itself represents a miscarriage of justice. We are acutely aware of the hardship imposed on all those involved by the need to conduct a second trial in this case. Either party, however, could have prevented the need for reversal here by pointing out to the judge at trial the obvious error contained in his charge. "[N]o part of the usual instructions to juries in criminal cases is of more significance than the discussion of reasonable doubt." *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128 (1977). It is also in the prosecutor's interest to make sure that the jury is correctly instructed. See general-

ly *Commonwealth* v. *Tabor,* 376 Mass. 811, 819-820 (1978).[5]

We reiterate that, "[w]hatever their value in other areas of the law in adding zest or currency to otherwise all too predictable proceedings, personal variations on elements [of the charge] such as reasonable doubt seldom represent sound judicial practice." *Commonwealth* v. *Therrien,* 371 Mass. 203, 208 (1976), quoting from *United States* v. *MacDonald,* 455 F.2d 1259, 1263 (1st Cir.), cert. denied, 406 U.S. 962 (1972). Explanations of reasonable doubt are best made in close reliance on the time-tested language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). *Commonwealth* v. *Ferreira,* 373 Mass. 116, 130 n.12 (1977). *Commonwealth* v. *Therrien, supra* at 209. *Commonwealth* v. *Gerald,* 356 Mass. 386, 390 (1969).

2. *Evidentiary issue.* The Appeals Court held that the trial judge's decision to admit evidence of Wood's statements to the victim concerning his prior conviction for rape was not an abuse of discretion. *Commonwealth* v. *Wood,* 7 Mass. App. Ct. 455, 459-460 (1979). We agree with the Appeals Court that there is no error in the admission of this evidence. See *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). See also *Commonwealth* v. *Harris,* 376 Mass. 201, 206 (1978).

The judgments are reversed, the verdicts are set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

---

[5]We find no merit in the Commonwealth's argument that experienced defense counsel's failure to object to that portion of the charge at issue here conclusively demonstrates the absence of any substantial risk of a miscarriage of justice. While counsel's failure to object limits our review to the question whether the charge as given created such a risk, counsel's silence cannot also be used to relieve this court of the responsibility of independently assessing this question. "[T]he prejudice caused a defendant by error does not somehow evaporate or diminish simply because his counsel has failed to object." *United States* v. *Leonard,* 494 F.2d 955, 975 (D.C. Cir. 1974) (Bazelon, C.J., concurring in part and dissenting in part).