COMMONWEALTH *vs.* STANLEY SLONKA.

No. 95-P-99.

Hampden. March 11, 1997. - May 30, 1997.

Present: DREBEN, KASS, & FLANNERY, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt. *Constitutional Law,* Right to obtain testimony, Self-incrimination. *Evidence,* Hearsay, Declaration against interest, Medical record. *Words,* "Fair doubt."

At the trial of indictments, the judge's erroneous definition, in supplemental instructions to the jury, of reasonable doubt as "fair doubt" unconstitutionally lowered the Commonwealth's burden of proof and improperly injected concepts of equity and elements of subjectivity into the jury's consideration: reviewing the charge as a whole, a substantial risk of a miscarriage of justice resulted and the defendant was entitled to a new trial. [762-767]

At the retrial of indictments the judge should determine whether a certain defense witness had, in an interview with defense counsel, waived his privilege against self-incrimination regarding his drug use with the victim shortly before she was attacked, so that he would not be entitled to claim the privilege when called to testify on the subject at trial. [767-769]

At the trial of indictments, the defendant did not demonstrate that certain proffered evidence constituted a statement against penal interest, and the judge did not err in excluding the evidence. [769-771]

At the retrial of indictments, unless there are other grounds for the exclusion of either or both of two entries in the victim's medical record, considerations of fairness and the rule of completeness require that if one entry is admitted then the other entry is admissible also. [771-772]

INDICTMENTS found and returned in the Superior Court Department on June 10, 1991.

The cases were tried before *Richard F. Connon,* J.

*Peter M. Onek* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

FLANNERY, J. A Superior Court jury found the defendant guilty of armed assault with intent to murder, G. L. c. 265,

§ 18(*b*), and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*b*). The defendant appeals, claiming that: 1) the judge inadequately defined the "beyond a reasonable doubt" standard of proof; 2) the judge erroneously excluded testimony of a witness; 3) the judge erroneously excluded an entry in a medical record and that trial counsel's failure to offer in evidence other similar records was ineffective assistance of counsel; and 4) the introduction of other bad acts evidence created a substantial risk of a miscarriage of justice, or alternatively, trial counsel's failure to object was ineffective assistance of counsel. We reverse.[1]

We summarize the facts based on the evidence presented at trial: About 4:30 P.M. on April 28, 1991, the defendant approached the victim, a prostitute addicted to cocaine, in his pickup truck and requested her services for a fee. She agreed and entered the truck. The defendant drove to a secluded location, told the victim to get out of the truck, and then said, "You know I am going to kill you, right?" Having trapped the victim between the truck on one side, a river embankment on the other, and the passenger-side door to her rear, the defendant stabbed the victim in the abdomen with what appeared to be hedge shears. Around 5 P.M., a passerby found the victim.

She was taken to a nearby hospital, where she was treated for extensive internal injuries. During her recovery in the hospital, the victim gave the police several descriptions of her attacker and his truck. Based on this information, the police created a composite picture. On May 21, 1991, while showing this picture to people in the area where the victim had been approached by her attacker, the police saw the defendant driving a truck. Police stopped the defendant and photographed him. Using this photograph, police created an array of photographs which were shown to the victim. She viewed the array twice between May 21, 1991, and June 4, 1991. Both times, she identified the defendant as the person who attacked her. Police arrested the defendant on June 5, 1991.

At trial, the defendant asserted that he was not the attacker. Through the testimony of family members and friends, he insisted that he was with his family, at the hospital with

---

[1]Because we reverse, we do not reach the defendant's request that we order the court reporter to locate and transcribe missing portions of the trial transcript.

his brother, or playing basketball during the time of the attack.

1. *The supplemental reasonable doubt instruction.* In his initial instructions to the jury, the judge defined reasonable doubt in accordance with *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850).[2] The jury began deliberating that day. During their deliberations the next morning, the jury notified the judge that they "would like to hear the explanation of reasonable doubt again." Responding to the jury's request, the judge instructed in part that "[r]easonable doubt is defined as a *fair doubt*. It's not an imaginary or possible doubt but a *fair doubt* based upon reason and common sense" (emphasis supplied).[3] The defendant did not object to this supplemental instruction.

[2]In relevant part, the judge stated that:

"The burden of proof is upon the Commonwealth to prove beyond a reasonable doubt that the [d]efendant is guilty of these indictments.

"The term reasonable doubt is often used and fairly well understood, but not so easily defined. So let me define it for you.

"It doesn't mean a mere possible doubt, because everything relating to human affairs and depending on fallible evidence is open to some possible or imaginary doubt. It is that state of the case, which after the entire comparison and consideration of all the evidence leaves the minds of jurors in that condition you cannot say that you feel an abiding conviction of a moral certainty of the truth of the charges. The burden of proof is upon the [p]rosecutor, all presumptions of law independent of evidence are in favor of innocence, and every person is presumed to be innocent until they are proved guilty.

"If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of an acquittal. For it is not sufficient to establish a probability, though a stron[g] one arising from the doctrine of chance, that the facts charged are more likely to be true than the contrary, but the evidence must establish the truth of the facts to a reasonable and moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act consciously upon it."

[3]In its entirety the supplemental instruction stated that:

"The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant is guilty of the charges made against him. You may then ask what reasonable doubt is. Reasonable doubt is defined as a fair doubt. It's not an imaginary or possible doubt but a fair doubt based upon reason and common sense. Reasonable doubt

The jury thereafter resumed deliberating only to notify the judge later that "[w]e have taken four (4) votes over the course of this morning and we now feel we can go no further. 7 Guilty, 5 Not Guilty." Thereupon, the judge, at around 1 P.M., gave a *Tuey-Rodriquez* charge. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). At approximately 3:30 P.M., the jury returned their verdict.

The defendant argues that the judge's supplemental instruction, equating reasonable doubt with a "fair doubt" and omitting *Webster*'s language regarding strong probability and the doctrine of chances, inadequately defined the "beyond a reasonable doubt" standard of proof. Thus, the defendant submits, the instruction violated his due process rights.

The Commonwealth must prove a defendant's guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Determining the adequacy of a jury instruction on reasonable doubt requires us to consider the charge as a whole and decide whether "a reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Rosa*, 422 Mass. 18, 27-28 & n.10 (1996), citing *Commonwealth* v. *Torres*, 420 Mass. 479, 490-491 & n.10 (1995), and *Commonwealth* v. *Sellon*, 380 Mass. 220, 233-234 (1980) (stating that a supplemental instruction must be read in context of the entire charge).[4] "A constitutionally deficient reasonable doubt instruction

is that state of the case which after the entire comparison and consideration of all of the evidence leaves your minds as jurors in that condition that you can't say that you have an abiding conviction to a moral certainty of the truth of the charge here made against the defendant. The burden of proof is upon the prosecutor on all the presumptions of the law independent of the evidence and every person is presumed to be innocent until he's proven guilty. If upon such proof reasonable doubt remains there, the accused is entitled to the benefit of an acquittal. The evidence must establish the truth of the facts to a reasonable and moral certainty and directs the understanding and satisfies the reason and judgment of you, the jurors, who are bound to act upon it. That's the definition of reasonable doubt."

The judge did not identify the source of this instruction. It is not contained in the Superior Court's standard instructions.

[4]Our State standard differs from the Federal standard. "The proper inquiry [under the Federal standard] is not whether the instruction 'could have' been applied in unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor* v. *Nebraska*, 511

amounts to a structural error which defies analysis by harmless error standards." *Commonwealth* v. *Pinckney*, 419 Mass. 341, 342 (1995).

The critical inquiry here is whether a reasonable juror could have understood and used "fair doubt" to lower the Commonwealth's burden of proof. Pointing to dictionary definitions of the word "fair," the defendant submits that the phrase "fair doubt" was misleading and could have been interpreted by reasonable jurors to overstate the amount of doubt necessary to acquit. See *Commonwealth* v. *Pinckney*, *supra* at 344. The defendant also argues that use of the word "fair" improperly injected concepts of equity and elements of subjectivity into determining whether the Commonwealth had met its burden of proof beyond a reasonable doubt. We agree on both points. Use of the phrase "fair doubt" does not clarify or give meaningful content to the concept of reasonable doubt. Nor can it be said that when used as it was here, in the context of a reinstruction on reasonable doubt, it is merely a neutral phrase having no impact on a jury's understanding of reasonable doubt. The word "fair" can be understood to be synonymous with words like "just" and "equitable," which are commonly understood to invoke notions of rough justice and fundamental fairness not necessarily in accord with the evidence. See Webster's Third New Intl. Dictionary 815 (1993). We conclude, therefore, that the phrase "fair doubt" as it was used here could be understood by a reasonable juror to lower erroneously the Commonwealth's burden of proof.[5]

---

U.S. 1, 6 (1994), citing *Estelle* v. *McGuire*, 502 U.S. 62, 72 & n.4 (1991). As noted in *Commonwealth* v. *Rosa*, "[o]ur case law is more favorable to a criminal defendant than the Federal standard." 422 Mass. at 28 n.10. Nor do we read *Commonwealth* v. *James*, 424 Mass. 770, 788 (1997), to say otherwise.

[5]In reaching this conclusion we are mindful that similar language has been reviewed and determined to be acceptable by several Federal and other State courts in the post-*Victor* era. See, e.g., *United States* v. *Campbell*, 61 F.3d 976, 980-981 (1st Cir. 1995), cert. denied, 116 S. Ct. 1556 (1996); *United States* v. *Miller*, 84 F.3d 1244, 1251-1253 (10th Cir.), cert. denied sub nom. *Hicks* v. *United States*, 117 S. Ct. 443 (1996); *Adams* v. *Duckworth*, 48 F.3d 1221 (7th Cir. 1995); *Dobyne* v. *State*, 672 So. 2d 1319, 1342-1344 (Ala. Cr. App. 1994). Compare *United States* v. *Birbal*, 62 F.3d 456, 462 (2d Cir. 1995) (criticizing use of "fair doubt" but reversing on different ground). Because of our tradition of adhering to the language of *Commonwealth* v. *Webster*, 5 Cush. at 320, we are not persuaded by their analyses.

The Commonwealth argues that — notwithstanding the judge's ill-advised use of the phrase "fair doubt" — the main charge and the remainder of the supplemental charge clearly "impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." *Commonwealth* v. *Pinckney*, 419 Mass. at 344, citing *Victor* v. *Nebraska*, 511 U.S. 1, 15 (1994). Although we agree that the charge must be reviewed as a whole, *Commonwealth* v. *Keniston*, 423 Mass. 304, 316 (1996), that precept does not change our conclusion here.

First, as a practical matter, the sufficiency of the main charge on reasonable doubt is irrelevant where, as here, the jury asked to be reinstructed on reasonable doubt and the judge gave a supplemental instruction capable of being understood to lower the Commonwealth's burden of proof. "Correct language in the main charge 'does not explain a constitutionally infirm [supplemental] instruction [and] will not suffice to absolve the infirmity.' " *Commonwealth* v. *Skinner*, 408 Mass. 88, 96 (1990), quoting from *Commonwealth* v. *Sires*, 405 Mass. 598, 600 (1989).

Second, contrary to the Commonwealth's assertion, we do not think that the remainder of the supplemental instruction in any way cured the improper instruction. See *Commonwealth* v. *Wood*, 380 Mass. 545, 548 (1980). In fact, as the defendant contends, the judge compounded the error by subsequently omitting *Webster*'s "strong probability" language.[6] Although we do not decide that omission of this language alone is reversible error, its omission here exacerbated an already flawed instruction. Compare *Commonwealth* v. *Williams*, 378 Mass. 217, 235 (1979); *Commonwealth* v. *Sheline*, 391 Mass. 279, 296 (1984).

Moreover, this case is distinguishable from *Commonwealth* v. *Keniston*, *supra* at 315-317, in which the court concluded that the unintelligible garbling of *Webster*'s "strong probability" language was not enough, viewed in light of the whole instruction, to create a substantial risk of a miscarriage of justice. The instruction at issue in *Keniston* unlike the instruction here, did not contain other language "suggest[ing] any diminution of the Commonwealth's burden of proof." *Id.* at

---

[6]The omitted *Webster* phrase provides "[f]or it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary." *Commonwealth* v. *Webster*, 5 Cush. at 320.

317. Also *Keniston* did not address the complete omission of this language; rather, it only dealt with the garbling of a portion of the "strong probability" language. Thus, *Keniston* cannot salvage the erroneous instruction here.

Nor can we, given the standard we apply in determining the sufficiency of a jury instruction, safely conclude that the judge's reference to a "fair doubt based upon reason and common sense" sufficed to clarify the meaning of the phrase "fair doubt." Once the supplemental instruction was given, "we do not know what the jurors understood" to be the proper definition of reasonable doubt. *Commonwealth* v. *Sullivan*, 20 Mass. App. Ct. 802, 807 (1985). "At worst, the charge could well have led the jury to believe that the [amount of doubt] required to convict was far lower than that properly demanded in a criminal case. At a minimum, these instructions must have left the jury . . . confused." *Commonwealth* v. *Wood*, 380 Mass. at 548. *Commonwealth* v. *Pinckney*, 419 Mass. at 348-349. Accordingly, because the use of "fair doubt" coupled with the omission of *Webster*'s "strong probability" language could have been understood by a reasonable juror to lower the Commonwealth's burden of proof, we conclude that the supplemental charge was error.[7]

The Commonwealth urges us to consider whether the charge created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Wood*, *supra* at 547; *Commonwealth* v. *Keniston*, 423 Mass. at 315-317. See generally *Commonwealth* v. *Amirault*, 424 Mass. 618, 646-647 (1997) (whether "evidence and the case as a whole [leaves] us with a serious doubt that the defendant['s] guilt had been fairly adjudicated"). The Commonwealth posits that the overwhelming evidence of the defendant's guilt mitigates any such risk. We disagree. Giving constitutionally deficient instructions on reasonable doubt results in a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Viera*, *post* 916, 917 (1997). See also *Com-*

---

[7]Had there been an objection, this error of constitutional dimension, i.e., inadequately defining the "beyond a reasonable doubt" standard, could not have been considered harmless. *Commonwealth* v. *Pinckney*, *supra* at 342, citing *Sullivan* v. *Louisiana*, 508 U.S. 275, 280 (1993) (noting that where there has been "no jury verdict of guilt beyond a reasonable doubt, the question whether the *same* verdict of guilt beyond a reasonable doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless error scrutiny can operate").

*monwealth* v. *Gagliardi*, 418 Mass. 562, 568 (1994), cert. denied, 513 U.S. 1091 (1995). Whether that risk can be mitigated following an uncured unconstitutional instruction is doubtful. Cf. *Sullivan* v. *Louisana*, 508 U.S. 275, 280-282 (1993). Where, as here, there has been no jury verdict of guilt beyond a reasonable doubt because the instruction stood uncured, there can be no question that the defendant's guilt has not been fairly adjudicated. The convictions, therefore, must be reversed.[8]

2. *Other issues.* Because several other issues raised by the defendant are likely to arise in the event of a retrial, we address them.

a. *Limitation of witness's testimony.* At trial, the defendant called Lawrence Kibbe as a witness. Kibbe, an acquaintance of the victim, was the last person to see the victim before the attack. Having been alerted by the Commonwealth that Kibbe might incriminate himself regarding drug use and prostitution, the judge appointed counsel to advise him of his rights before testifying. Upon learning that Kibbe would invoke his privilege against self-incrimination if asked any questions about drug use, the judge allowed Kibbe to testify but forbade any questions regarding drug use by Kibbe or the victim. Contrary to the victim's testimony that in the days leading up to the attack she had been sleeping at a friend's house, Kibbe testified that he had been with her during the two days preceding the attack and that she had gone out on "dates" approximately once an hour during that time. What the jury did not hear from Kibbe, according to the defendant's offer of proof, was that Kibbe and she had been free-basing cocaine

---

[8]Because we think that the result here was avoidable, we take this opportunity to restate the court's admonition in *Commonwealth* v. *Wood*, *supra* at 550-551: "We are acutely aware of the hardship imposed on all those involved by the need to conduct a second trial in this case. Either party, however, could have prevented the need for reversal here by pointing out to the judge at trial the obvious error contained in his charge. '[N]o part of the usual instructions to juries in criminal cases is of more significance than the discussion of reasonable doubt.' It is also in the prosecutor's interest to make sure that the jury is correctly instructed.

"We reiterate that, '[w]hatever their value in other areas of the law in adding zest or currency to otherwise all too predictable proceedings, personal variations on elements [of the charge] such as reasonable doubt seldom represent sound judicial practice.' Explanations of reasonable doubt are best made in close reliance on the time-tested language of *Commonwealth* v. *Webster*, [5 Cush. at 320]" (citations omitted).

during the two days before the attack and that, in particular, they had smoked crack cocaine about thirty minutes before the stabbing.

The defendant contends that the judge's exclusion of any testimony regarding this drug use by the victim was prejudicial error. In particular, the defendant argues that the error prejudiced the defendant by not allowing him to (1) impeach the victim's testimony that she had not used drugs during the five days prior to the attack, and (2) probe the impact of the victim's drug use immediately prior to the attack on her ability to identify her attacker. Responding, the Commonwealth urges that the judge properly limited Kibbe's testimony out of concern for his privilege against self incrimination. Even if the judge did err, the Commonwealth continues, there was no prejudice to the defendant since Kibbe's testimony was merely cumulative of other evidence adduced at trial. On the present record, whether Kibbe properly invoked his privilege is unclear.

"The Sixth Amendment guarantees a defendant's right to present a defense, including the right to call witnesses to testify on his behalf." *Commonwealth* v. *Drumgold*, 423 Mass. 230, 247 (1996), citing *Washington* v. *Texas*, 388 U.S. 14, 19 (1967); *Commonwealth* v. *Durning*, 406 Mass. 485, 495 (1990). This right, however, "is not absolute; in the face of 'legitimate demands of the adversarial system,' this right may be tempered according to the discretion of the trial judge." *Commonwealth* v. *Durning, supra,* quoting from *United States* v. *Nobles*, 422 U.S. 225, 241 (1975). Likewise, "a trial judge has the discretion to control the scope of the examination of witnesses." *Commonwealth* v. *Durning, supra.* "If a judge exercises his or her discretion to limit the defendant's right to call witnesses [or the scope of the examination of those witnesses], the restriction cannot be arbitrary." *Commonwealth* v. *Drumgold, supra.*

Determining the scope of Kibbe's testimony required the judge to limit the defendant's right to present his defense to accommodate the witness's privilege against self-incrimination. A witness's assertion of his privilege may "in some cases hinder a defendant's ability to present his most effective defense." *Commonwealth* v. *Curtis*, 388 Mass. 637, 646 (1983); *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 406 (1990). Kibbe's rights, here, "cannot be ignored

[simply] for the defendant's benefit." *Commonwealth* v. *Mc-Miller, supra.* "[A] witness who asserts [the] privilege cannot be compelled to testify unless it is *'perfectly clear* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Powers* v. *Commonwealth,* 387 Mass. 563, 564-565 (1982), quoting from *Malloy* v. *Hogan,* 378 U.S. 1, 12 (1964), and from *Hoffman* v. *United States,* 341 U.S. 479, 488 (1951). *Commonwealth* v. *Martin,* 423 Mass. 496, 502 (1996). *Commonwealth* v. *McMiller, supra.*

Although not raised by either party, this analysis is irrelevant if Kibbe waived his privilege. In November, 1991, several months after the defendant was indicted, Kibbe told defense counsel about his drug use with the victim before the attack. Defense counsel transcribed Kibbe's statements and had him sign the writing "under the penalties of perjury." If this sworn statment was given "freely and voluntarily," then Kibbe forfeited his privilege against self-incrimination. See *Commonwealth* v. *Koonce,* 418 Mass. 367, 378-379 (1994). Contrast *Taylor* v. *Commonwealth,* 369 Mass. 183, 190-191 (1975).

However, because the issue of waiver was not addressed below, we do not decide whether Kibbe properly invoked his privilege.[9] In the event of retrial, the judge should determine whether Kibbe "freely and voluntarily" waived his privilege as to his own drug use when he gave his statement to defense counsel in November, 1991. *Commonwealth* v. *Koonce, supra* at 377-379.

b. *Exclusion of written statement.* After the judge limited the scope of Kibbe's testimony, the defendant moved to introduce a portion of his counsel's interview notes with Kibbe, concerning Kibbe's use of drugs with the victim immediately before the attack, as a statement against penal

_____

[9]During redirect examination by defense counsel, Kibbe testified that he voluntarily made his statements to defense counsel, that defense counsel did not put words in his mouth, and that the contents of the writing were true at the time he signed it. This testimony, however, came after the judge concluded that Kibbe properly invoked his privilege. And even after eliciting this testimony, defense counsel did not raise the issue of waiver.

interest.[10] See *Commonwealth* v. *Galloway*, 404 Mass. 204, 207-208 (1989). The judge did not admit the statement in evidence. The defendant now complains that the judge abused his discretion. We disagree.

"A statement [against penal interest] must meet three tests to be admissible: '[1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true"; and, [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.' " *Ibid.*, quoting from *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986), and *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). To the extent that the defendant seeks to admit portions of the statement which did not deal with drug use, and as to which, therefore, Kibbe was available to testify, this exception to the hearsay rule does not apply. The only portions of the statement for which Kibbe was unavailable were those portions dealing with drug use. The defendant offered only statements relating to drug use immediately before the attack, so the sole pertinent passage in the statement would be "we had a couple of bowl fulls." Determining whether this statement meets the foregoing test requires us to consider that "it is not the fact that the declaration is against interest but the awareness of that fact by the declarant which gives the statement significance." *Commonwealth* v. *Drew*, *supra* at 74 (1986), quoting from Jefferson, Declaration Against Interest: An Exception to the Hearsay Rule, 58 Harv. L. Rev. 1, 17 (1944). Nothing in the circumstances here suggests Kibbe's awareness that his statements were against his interest. Compare *Commonwealth* v. *Drew*, *supra*; *Commonwealth* v. *Galloway*, *supra* at 208. Unlike during the trial, where Kibbe's court-appointed counsel advised him of the potentially incriminating nature of his anticipated testimony, he apparently had not spoken to an

---

[10]Initially, the defendant's written motion sought to have the entire statement admitted in evidence. The defendant contended that the entire statement was material because it challenged the victim's credibility generally, it excluded the defendant's presence at the time and place of the crime, and it showed that the victim used drugs immediately before the attack. After some discussion of the motion in court, however, the defendant sought to introduce only that portion of the statement relating to Kibbe's and the victim's drug use immediately before the attack.

attorney before making this statement. Moreover, we doubt that the statement that the defendant was ultimately trying to place before the jury — "[she] smoked a couple of bowl fulls" — would be admissible as a statement against Kibbe's penal interest. *Williamson* v. *United States*, 512 U.S. 594 (1994). Accordingly, we conclude the judge properly denied the motion.

3. *Exclusion of entry in medical record.* On several occasions during trial, the defendant attempted unsuccessfully to offer in evidence an entry in the victim's post-attack drug rehabilitation center medical record in which she stated that "she has memory problems." The statement, appearing on page twenty-eight of the medical record, was made by the victim to a counselor at the hospital on June 16, 1991. Apparently agreeing with the Commonwealth's contention, that the statement was a privileged communication to a psychotherapist, the judge did not allow the page containing the statement in evidence. G. L. c. 233, § 20B. However, later in the trial, the judge permitted the prosecution to introduce in evidence page five of the same hospital record, made on June 14, 1991, which contained the statement, "[r]emote and recent memory seem intact." The defendant questioned the inconsistency of allowing page five in evidence while excluding page twenty-eight. Responding, the judge in part stated, "I mean, what's the problem letting it in, there's nothing damaging to your side, there's nothing here." The defendant did not further object.

The defendant now complains that in light of the introduction of page five in evidence, the judge erroneously excluded the entry on page twenty-eight. Relying on *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), the Commonwealth counters that the defendant failed to show the relevancy of the entry on page twenty-eight, see *id.* at 182, and that even if it was relevant, the statement was a privileged communication which the defendant failed to show the necessity of disclosing. *Id.* at 182-183. Furthermore, the Commonwealth continues, even assuming that the defendant established relevancy and necessity, he pointed to no exception to the hearsay rule which would admit the statement. G. L. c. 233, § 79. *Bouchie* v. *Murray*, 376 Mass. 524, 527-531 (1978).

Unless there are other grounds for excluding either or both of the entries, considerations of fairness and the rule of

completeness require that if the entry on page five is admitted in evidence, the entry on page twenty-eight should also be admitted. See *Commonwealth* v. *Perry*, 385 Mass. 639, 642-643 (1982); *Commonwealth* v. *Dunne*, 394 Mass. 10, 16-17 (1985). Cf. Rule 106 of the Proposed Massachusetts Rules of Evidence ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it"); Liacos, Massachusetts Evidence § 312, at 104-106 (6th ed. 1994).

We have considered the defendant's arguments concerning evidence of other bad acts and ineffectiveness of counsel. They are without merit.

The judgments are reversed, and the verdicts are set aside. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*