**Thomas J. LANIGAN,
Petitioner, Appellee,**

v.

**Michael T. MALONEY,
Respondent, Appellant.**

**Nos. 88–1200, 88–1424.**

United States Court of Appeals,
First Circuit.

Heard June 6, 1988.
Decided Aug. 9, 1988.

Judy G. Zeprun, Asst. Atty. Gen., Criminal Bureau, with whom James M. Shannon, Atty. Gen., was on brief, for respondent, appellant.

David J. Fine, by Appointment of the Court, with whom Silverglate, Gertner, Fine & Good was on brief, for petitioner, appellee.

Before COFFIN, and SELYA, Circuit Judges, and ACOSTA,[*] District Judge.

COFFIN, Circuit Judge.

The district court granted Thomas J. Lanigan's petition for a writ of habeas corpus on the ground that the instructions on reasonable doubt given at his criminal trial in Massachusetts state court were constitutionally defective. The Commonwealth appeals, claiming that the district court erred both on the merits and in failing to find that Lanigan's claim is procedurally barred. We have carefully considered the Commonwealth's arguments, but conclude that the district court properly found a redressible constitutional violation. We therefore affirm.

I.

Petitioner Thomas J. Lanigan was convicted in Massachusetts of armed robbery, assault with intent to murder, assault and battery with a dangerous weapon, and kidnapping. At trial, petitioner specifically requested reasonable doubt instructions in the language of *Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 320 (1850), a long-standing formulation repeatedly approved by the Massachusetts Supreme Judicial Court. Petitioner objected to the trial judge's failure to conform to the *Webster* charge, and later challenged the instruction on appeal.

The Massachusetts Appeals Court reversed the two assault convictions because of problems with the jury instructions on those particular crimes, but affirmed the convictions for armed robbery and kidnapping. The court found that the reasonable doubt charge "passed muster ..., although the question is close." *Commonwealth v. Lanigan*, 12 Mass.App.Ct. 913, 915, 423 N.E.2d 800, 802 (1981). The Supreme Judicial Court denied Lanigan's petition for further appellate review.

In his petition for a writ of habeas corpus, Lanigan challenged the reasonable doubt instruction on three grounds. First, he complained that the judge twice equated proof beyond a reasonable doubt with "proof to *a degree* of moral certainty," allowing the jurors to find guilt even if they were substantially less than morally sure of their conclusion. Second, the judge contrasted the criminal standard of proof beyond a reasonable doubt with the civil standard of preponderance of the evidence in a way that petitioner claims was confusing. Finally, petitioner claimed that the reasonable doubt instruction was unbalanced in that "it heavily emphasized why the burden of proof could not be too rigorous, but failed to explain at all why it was important that the burden be as rigorous as it was."

The district court held that as a result of these defects "there is a significant possibility that the jurors in this case entered the jury room with no clear sense of what degree of certainty was required in order to convict the defendant," thus " 'obfuscat[ing] one of the "essentials of due process.

---

[*] Of the District of Puerto Rico, sitting by designation.

cess and fair treatment," ' " District Court Opinion at 6 (quoting *Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.1978) (quoting *In re Winship,* 397 U.S. 358, 359, 90 S.Ct. 1068, 1070, 25 L.Ed.2d 368 (1970))). The court therefore granted Lanigan's petition for a writ of habeas corpus.

On appeal, the Commonwealth argues first that petitioner's claim is procedurally barred because he failed at trial to make the three specific objections to the charge that he now makes in his habeas corpus petition. The Commonwealth argues secondly that the reasonable doubt instruction adequately conveyed the meaning of "beyond a reasonable doubt." Finally, the Commonwealth argues that even if there was error, it was harmless because of the overwhelming evidence against petitioner. We begin with the Commonwealth's procedural point.

## II.

■ The Commonwealth argues that petitioner is in procedural default because his trial counsel's general objection that the reasonable doubt instruction did not follow the language of *Commonwealth v. Webster* was insufficient to comply with the Massachusetts rule that "where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any," *Commonwealth v. McDuffee,* 379 Mass. 353, 357 & n. 3, 398 N.E.2d 463, 465 & n. 3 (1979). *See also* Mass.R.Crim.P. 24(b) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection."). Under *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), a defendant's failure to object at his state trial may constitute "an independent and adequate state procedural ground" sufficient to foreclose federal ha-

beas corpus review if the state has a contemporaneous objection rule and has not waived its application. *Puleio v. Vose,* 830 F.2d 1197, 1199 (1st Cir.1987). The Commonwealth argues that the *Wainwright* doctrine bars federal review in this case.

■ The exhaustion doctrine, which the Commonwealth does not directly invoke,[1] raises similar questions about whether we may entertain Lanigan's petition for a writ of habeas corpus. In general, the exhaustion doctrine requires that a state defendant seeking to overturn his conviction on federal grounds first must give the state courts "a fair opportunity" to consider his claims. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). This means that the habeas corpus petitioner must have presented the substance of his federal constitutional claim to the state appellate courts so that the state had the first chance to correct the claimed constitutional error.

We conclude that neither the Massachusetts contemporaneous objection rule nor the exhaustion doctrine bars federal review of Lanigan's claim. We shall address each in turn, beginning with the objection rule.

■ At the conclusion of the jury charge, petitioner's trial counsel said simply, "Commonwealth versus Webster in my instructions." This skeletal objection ordinarily might be dismissed as inadequate to preserve any issue connected with the charge. But in this instance, everyone, including the judge, clearly understood the reference to *Commonwealth v. Webster* as an objection to the reasonable doubt instruction. The Commonwealth does not dispute that counsel's statement at the close of the charge sufficiently preserved an objection to the reasonable doubt charge; it claims only that the specific objections raised in federal court differed from those made in state court.

The problem we find in the Commonwealth's finely tuned argument is that, once we acknowledge that a cognizable ob-

---

**1.** The Commonwealth does not expressly claim that petitioner failed to exhaust his remedies in state court, but in its brief it relies not only on cases discussing procedural default but also on cases and principles concerning exhaustion. We therefore believe it appropriate to consider both issues.

jection has been made, we find it difficult to escape the conclusion that petitioner's demand was for the essence of the *Webster* charge, i.e., a balanced charge highlighting the high burden of proof. If such was the clear purport of the demand, we fail to see how petitioner's three present specifications of imbalance should not fairly be deemed covered by his more comprehensive objection.

In an effort to understand how much is conveyed both by the *Webster* charge and by a simple objection to its not being given, we first dissect the *Webster* charge itself.[2] In eight tightly constructed sentences, these points are made: the term "reasonable doubt" is not easily defined; it is not "mere possible doubt"; it exists when there is no "abiding conviction, to a moral certainty"; the burden of proof is on the prosecutor and all presumptions favor innocence; even a "strong" probability of guilt is not enough; evidence must establish guilt to a "reasonable and moral certainty" that "convinces ... the understanding"; going beyond this would require absolute certainty and exclude circumstantial evidence. This passage takes no fewer than five approaches to conveying the essence: (1) what is less than reasonable doubt; (2) where the burden lies; (3) whom the presumptions favor; (4) what kind of moral certainty amounts to reasonable doubt; (5) what is more than reasonable doubt. We find it hard to imagine, without recourse to prolixity, a charge more reflective of the solemn and rigorous standard intended.

In light of the care demonstrated in *Webster,* it is not surprising that the Supreme Judicial Court repeatedly has taken pains in recent opinions to endorse the century-and-a-quarter-old formulation. *See, e.g., Commonwealth v. Ferreira,* 373 Mass. 116, 130 n. 12, 364 N.E.2d 1264, 1273 n. 12 (1977); *Commonwealth v. Therrien,* 371 Mass. 203, 209, 355 N.E.2d 913, 916–917 (1976); *Commonwealth v. Gerald,* 356 Mass. 386, 390, 252 N.E.2d 344, 347 (1969). Indeed, the Supreme Judicial Court specifically has encouraged Massachusetts trial judges to adhere to the "time-tested" *Webster* charge as a way of protecting against juror confusion over the meaning of the reasonable doubt standard. *See, e.g., Therrien,* 371 Mass. at 208–209, 355 N.E.2d at 916 ("freehand embellishments of the standard charge ... can only create uncertainty and breed needless appeals").

This particular history of this seminal instruction persuades us that an objection noting generally the failure to charge in the language of *Webster* is entitled to be construed as protesting significant deviations from the sensitive balance in favor of a defendant achieved in that case. In essence, this history suggests that to say more is unnecessary; it is to be expected that Massachusetts judges know the *Webster* charge, know what content is sought when it is requested, and know what omissions or assertions are contested when a lawyer objects to the failure to give the charge.

Moreover, in his brief to the state appeals court, petitioner obviously went be-

---

**2.** Lanigan requested the following language:

"[A reasonable doubt] is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proven guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal. For it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances; that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it. This we take to be proof beyond a reasonable doubt; because if the law, which mostly depends upon considerations of a moral nature, should go further than this and require absolute certainty, it would exclude circumstantial evidence altogether."

This instruction is, with the exception of some punctuation and other minor changes, drawn verbatim from *Webster,* 59 Mass. at 320.

yond the content of his trial counsel's voiced objection by complaining, *inter alia,* that the concept of "moral certainty" was insufficiently explained. In giving serious consideration to petitioner's appeal, the Massachusetts Appeals Court implicitly accepted the objection made by petitioner's counsel as sufficient to preserve his more specific appellate claim. The Appeals Court apparently recognized that, although petitioner's argument had on appeal become more detailed, its substance had not changed. We do not believe that the state court would consider the additional complaints about the reasonable doubt standard made in petitioner's habeas petition to be any less preserved.

In addition, we note that after petitioner's counsel objected to the reasonable doubt instruction, the trial judge expressed outright rejection of the *Webster* charge, stating his preference for formulations from cases that do not, in fact, exist.[3] By invoking preferred "authority" to which counsel obviously was unable to respond, the judge cut off counsel's protest at the point at which the lawyer could have been expected to elaborate on the inadequacies of the charge as given. In these circumstances, at least, we are confident that the Massachusetts courts would not interpose a technical barrier to petitioner's claim.

■ The exhaustion issue is even clearer. "[Petitioner] is not precluded from some reformulation of the claims [he] made in the state courts, since exhaustion requires only that 'the *substance* of a federal habeas corpus claim must first be presented to the state courts.'" *Williams v. Holbrook,* 691 F.2d 3, 6 (1st Cir.1982) (quoting *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)) (emphasis added in *Williams*). Thus, although the legal theory behind the claim raised to the state and federal courts must

be the same, "[t]his does not mean that the petitioner must have expressed the theory in precisely the same terms." *Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir.1987). *See Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) ("[T]here are instances in which 'the ultimate question for disposition' ... will be the same despite variations in the legal theory or factual allegations urged in its support.")

The substance of Lanigan's claim has not changed; in both state and federal courts, he has argued that the reasonable doubt standard was not adequately conveyed to the jury and that the charge as given therefore trivialized the burden of proof needed to convict. The added detail in Lanigan's habeas corpus petition is precisely the sort of reformulation anticipated and allowed by the courts. *See Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (challenging a confession based on psychological as well as physical coercion does not change the ultimate question before the court); *Watkins v. Callahan,* 724 F.2d 1038, 1041 (1st Cir.1984) (federal claim that an evidentiary hearing should be held to determine who initiated certain conversations was adequately presented to state court, where petitioner argued that such statements should be suppressed per se). *See also Daye v. Attorney General of the State of New York,* 696 F.2d 186, 192 n. 4 (2d Cir.1982) (en banc) ("By the same legal 'basis' or 'doctrine,' we do not mean that there can be no substantial difference in the legal theory advanced to explain an alleged deviation from constitutional precepts.... A number of legal theories may be advanced as to why a confession was not voluntary. Yet all that is needed to alert the state courts to the constitutional nature of the claim is the exposition of the material facts and the assertion that the confession was not voluntary.")

---

**3.** After petitioner objected, the trial judge stated:
I didn't give for the record—you will read the Commonwealth and Webster—looking upon disfavor. The Commonwealth and Rodriguez I prefer to all the other cases, even including one I like, Commonwealth and Lummus.
The Commonwealth does not dispute petitioner's representation that there are no cases by the

name of *Commonwealth v. Rodriguez* or *Commonwealth v. Lummus* that approve language for a reasonable doubt instruction. It appears that the trial judge was referring to Justice Henry Tilton Lummus, who sat on the Supreme Judicial Court from 1932 to 1955.

Some claims of constitutional violations —such as ineffective assistance of counsel or unfair trial—encompass an almost limitless range of possible errors. A defendant raising a Sixth Amendment violation who complained in state court about counsel's failure to object to certain testimony should not be deemed to have exhausted his or her remedies if the federal court claim asserts ineffective assistance of counsel based on a conflict of interest. In such a case, the state court's analysis of the alleged constitutional error necessarily would differ substantially from the federal court's consideration of the Sixth Amendment claim. And the defendant's original argument would not have alerted the state court to the claim that formed the basis of the habeas corpus petition. *See, e.g., Gagne v. Fair,* 835 F.2d 6, 9 (1st Cir.1987) (no exhaustion where state court claim of unfair trial based solely on prosecutor's comment vouching for credibility of witness, while habeas corpus petition claimed that such comment violated his constitutional rights in light of other comments and entire proceedings); *Domaingue v. Butterworth,* 641 F.2d 8, 12–13 (1st Cir.1981) (no exhaustion where petitioner's ineffective assistance of counsel claim in state court based solely on trial counsel's failure to object to a self-defense instruction, while habeas corpus petition attacked lawyer generally based on numerous occurrences not in state court record); *Turner v. Fair,* 617 F.2d 7, 11 (1st Cir.1980) (petitioner argued new theory in federal court in support of Sixth Amendment confrontation claim, rendering state court analysis irrelevant).

In contrast, Lanigan's claim to both the state and federal courts depends upon resolution of the same question—whether the language of the trial judge's instructions gave a clear sense of the degree of proof necessary to convict. This is unquestionably a case in which the difference in petitioner's arguments to the state and federal courts represented "a mere variation[ ] in the same claim rather than a different legal theory," *Wilks v. Israel,* 627 F.2d 32, 38 (7th Cir.1980). Such a difference does not preclude exhaustion. We therefore turn now to consider the merits of petitioner's claim.

### III.

■ Although criminal defendants frequently challenge the content of the reasonable doubt instruction given at their trials, our experience has been that even imperfect formulations usually meet constitutional requirements when viewed in the context of the entire charge. *See, e.g., United States v. Glantz,* 847 F.2d 1, 11–12 (1st Cir.1988); *United States v. Glenn,* 828 F.2d 855, 861 (1st Cir.1987); *United States v. Munson,* 819 F.2d 337, 345–346 (1st Cir. 1987); *United States v. Drake,* 673 F.2d 15, 21 (1st Cir.1982); *Bumpus v. Gunter,* 635 F.2d 907, 909–913 (1st Cir.1980). We therefore begin by reproducing the court's entire reasonable doubt instruction:

You have sat throughout the month in automobile accidents, products liability, defects in automobile manufacturers, Ford, Chrysler, General Motors, defects in machinery, defective parts of machinery, fall downs on snow and ice, breach of contract. What are all those cases? They're Civil cases. They don't belong in this session. This is a Criminal session not a Civil session and the only reason I make any reference at all to the Civil session is in contradistinction to the Criminal session, which this is, is to emphasize to you burden of proof in our blessed and wonderful country, who is accused of a crime, that's all Lanigan is. He was arrested, he may have been indicted, he may have been charged, he may have been accused, he stands accused of a crime. A complaint on the fourth floor, the District Court, an indictment of this the second floor, the felony session. What are they? Pieces of paper that are accusations that's all until a jury determines the guilt or the innocence of the party. So remember the mere fact a person is arrested or a person—you read in the paper that somebody the Grand Jury has indicted them for probable cause in crime—remember their guilt is nothing at that point, until such time in our blessed country as their guilt is proven by a Criminal jury, such

46

as you are, beyond a reasonable doubt and I am going to give you in a minute what I consider the best case that ever came down in the state as to what is meant by proof beyond a reasonable doubt by Judge Lummus a Judge in another day and time, long departed.

Now, on the Civil side of the Court, which this is not, automobile accidents, product liability, fall down on snow and ice. On the Civil side of the Court before you award anybody a quarter, two things they have to prove to your satisfaction. What would they be? Number one: Liability, blame, culpability, responsibility, fault, negligence, for the happening of, the occurrence of the accident, or the incident, with resulting injuries. Number two: They have to prove that the injury was directly related to the happening of the accident. That's the Civil side of the Court.

What's the burden of proof there? Well, you have all seen it, ladies and gentlemen, there isn't a man or woman here who at sometime in your life time haven't seen a picture of the female goddess of justice, or remember a statue or picture. She stands before you blindfolded, indifferent, indifferent to prejudice, indifferent to bias, indifferent to anything in the nature of emotional appeal, but she particularly stands before you with what? The scales of justice in her arms. And there, on the Civil side of the Court, which this is not, those scales of justice must be tilted on liability and on damages, both of them, by a fair preponderance of the evidence, before you award to any plaintiff. That's the Civil side of the Court.

Now, I come to the Criminal side of the Court, that's what we're on today, the Criminal side of the Court. This young man is accused of four crimes and he stands accused, indicted, he is charged with four crimes. The burden here is not to prove his guilt by a fair preponderance of the believable evidence, tilting the scales slightly in his favor. The burden here, Mr. Foreman and ladies and gentlemen of this jury is to prove his guilt beyond a reasonable doubt. On the Criminal side of the Court, which this is, a criminal, one who is charged with a crime I should say, not a criminal—who is charged with a crime—his guilt must be established beyond a realm of speculation, guess work, surmise. That sort of thing must be established how? Beyond a reasonable doubt. Meaning what? Meaning beyond all doubt? Never, because it's impossible in our society to prove anybody guilty of a crime beyond all doubt. That would be too lofty a standard, it would be unattainable. But the standard is proof beyond a reasonable doubt. Meaning what? *That proof to a degree of moral certainty.* Meaning what? That the 12 of you good people, the jury will be reduced from 14 to 12 by the clerk, 12 of you good people invoke and calling upon your good God given common sense and basically weight and evaluate, recreate the evidence, you are going to ask yourselves are we satisfied, how? *To a degree of moral certainty* not beyond an absolute doubt that the accused did commit the crime, or the crimes of which he stands accused before us. That's your issue, that's your job, that's what you're here for today. It is not my job, it's not any of the judges' job.

(Emphasis added.)

Reduced to its basics, this charge told the jurors that proof beyond a reasonable doubt meant that the defendant's guilt had to be proven not merely by conjecture or guesswork but to "a degree of moral certainty." Less than certainty was sufficient, the jurors were told, because "it's impossible in our society to prove anybody guilty of a crime beyond all doubt."

We think this instruction created a significant risk that the jurors could find guilt based on a threshold of proof below that required by the Constitution. The primary problem, as recognized by the district court, was the use of the phrase "to a degree of moral certainty." The judge's instruction essentially told the jurors that they needed some undefined amount of—"a degree of"—moral certainty to find petitioner guilty. The Massachusetts Appeals

Court did not comment on the trial judge's addition of the words "a degree of" to the moral certainty concept. We do not believe those words may be overlooked. Semantically, it is as if an instruction in a tort case informed the jury that "a degree of due care" was all that was required of the defendant to avoid liability. In this case, where an individual's guilt or innocence is at stake, the not so subtle difference represented by the words "to a degree of" is of even greater importance.[4]

Although the use of this language on its own may not always be constitutional error, its harmful effect was given full sweep in the present context. What was said, and not said, in other parts of the charge was likely to exacerbate, rather than ameliorate, the troubling aspects of the "to a degree of moral certainty" language. First, in otherwise defining the reasonable doubt standard, the judge added little dimension to the "degree of moral certainty" description. He said only that guesswork was not enough, and that absolute certainty would be too much to require—leaving "a very broad range." District Court Opinion at 5. The instruction failed to convey the critical point that, while absolute certainty is unnecessary, a belief in guilt at least *approaching* absolute certainty *was* required. In addition, although the judge explained why absolute certainty would be too much to require, he never discussed why it was important to require a very

high standard of proof. Thus, the jurors may well have been left with an impression that any amount of persuasion—i.e., anything beyond guesswork or conjecture—properly could constitute sufficient "moral certainty" to support a guilty verdict.[5]

Second, the judge's lengthy discussion of the civil standard of proof at the preface of his reasonable doubt instruction was, as the district court noted, "confused and confusing." Nowhere did the instruction actually contrast the level of proof required for the government to meet its burden in a criminal case with the level of proof needed by a civil plaintiff, except to say that, in the criminal case, the standard was proof beyond a reasonable doubt rather than a preponderance of the evidence.

Third, the words of the instruction at some points defied comprehension. The judge referred to "a degree of moral certainty *not beyond an absolute doubt*"—a perplexing combination of concepts. What does it mean to have an "absolute doubt?" Can one have an "absolute" doubt and still be morally certain?

Finally, and particularly harmful, was the judge's description early in his charge of the jury's role:

> [B]oth sides put in their factual picture and it's up to you, it's not up to me, not up to any other judge, and not up to any lawyer, and not up to anybody else, but solely and exclusively up to you, jurors to determine where the ring of truth,

---

4. The significance of using the phrase "a degree of moral certainty" rather than a "moral certainty" when discussing the state of certitude necessary for finding guilt seems even greater when that language is contrasted with the language from *Webster*, where the Supreme Judicial Court did not use the moral certainty concept in isolation but linked it with other terms emphasizing the high degree of proof needed. For example, the SJC referred to an "abiding conviction, to a moral certainty," and to evidence establishing proof to "a reasonable and moral certainty."

We repeatedly have criticized the practice of defining reasonable doubt in terms of "moral certainty," although we have not found use of the phrase to be constitutional error. *See, e.g., United States v. Drake,* 673 F.2d 15, 21 (1st Cir.1982); *United States v. Indorato,* 628 F.2d 711, 720–721 (1st Cir.1980); *United States v. Ariza-Ibarra,* 605 F.2d 1216, 1228 (1st Cir.1979). While the context of the *Webster* charge lessens

the potential for any harmful inferences to be drawn by the jury, the use of the phrase *"to a degree of* moral certainty," particularly without the *Webster* context, is substantially more problematic.

5. At oral argument, the Commonwealth offered another plausible construction for the phrase "to a degree of moral certainty." Counsel suggested that the judge had intended to convey not that the level of certitude was *some* degree of moral certainty but that the "degree" of certainty was *moral* certainty. In other words, counsel construed the judge as possibly saying that the jurors need not be *absolutely* sure of their judgment but only *morally* sure. Although this meaning is conceivable, there is a substantial risk that the jurors understood the phrase to have the more harmful connotation, particularly in light of the remainder of the judge's charge.

integrity, honesty abides. That's your job....

This instruction—suggesting that the jury's task is to figure out which side is "right" rather than to determine whether the government proved guilt beyond a reasonable doubt—would increase the jury's tendency to undervalue the reasonable doubt standard. The instruction allowed the jurors to believe that it was sufficient if they found the government's version of events to be more plausible than the defendant's; they could have believed that the "degree of moral certainty" they needed was simply certainty that the government's evidence was more believable than the defendant's.

Although a judge need not define reasonable doubt,[6] any definition given must not reduce the government's burden of proof. *United States v. Olmstead*, 832 F.2d 642, 645–46 (1st Cir.1987). In this case, the judge's attempted explanation could well have had the effect of minimizing the burden. The phrase "to a degree of moral certainty" was the only affirmative definition of reasonable doubt offered. To the extent the jurors gave meaning to that phrase based on the remainder of the judge's instructions, their inclination could have been to give the government the benefit of the "doubt."

In sum, the entire thrust of the reasonable doubt charge was to de-emphasize the strength of what is supposed to be a very strong standard, potentially depriving petitioner of perhaps his most important protection against an improper verdict. *See Dunn v. Perrin*, 570 F.2d 21, 25 (1st Cir. 1978) (discussion of the right to proof beyond a reasonable doubt is "perhaps the most important aspect of the closing instruction to the jury in a criminal trial"). We therefore conclude that the charge as given in this case rose to the level of constitutional error.[7]

## IV.

A finding of constitutional error, however, does not end this case. The Commonwealth argues that the error must be deemed harmless because the evidence against petitioner is overwhelming. Petitioner responds that failure to instruct the jury properly on the reasonable doubt standard can never be harmless because the right to trial by jury includes the right to have the jury decide whether the Commonwealth proved its case beyond a reasonable doubt.

We previously have declined to hold that a constitutionally defective instruction on reasonable doubt could never be deemed harmless, although we noted that "if such a case can be conceived, it would have to contain unique circumstances ...," *Bumpus v. Gunter*, 635 F.2d 907, 909 (1st Cir. 1980) (citing *Dunn v. Perrin*, 570 F.2d 21, 25 (1st Cir.1978) (leaving to "another day" decision whether constitutionally defective charge on reasonable doubt can ever be harmless)). We continue to have serious doubts whether a conviction obtained without a proper reasonable doubt instruction could ever be upheld; we are certain that this is not the unusual case in which to do so. We draw this conclusion from Supreme Court precedent and from our understanding of the role played by the jury in the criminal trial process.

---

6. We note that the Massachusetts Appeals Court has held that it is error, under state law, for a trial judge to fail to give an instruction on the meaning of reasonable doubt. *Commonwealth v. Stellberger*, 25 Mass.App.Ct. 148, 149, 515 N.E.2d 1207 (1987).

7. The Commonwealth argues that our standard of review in this case is circumscribed because we are reviewing a state criminal proceeding rather than a federal case. We agree that, in this situation, the question is "not merely whether 'the instruction is undesirable, erroneous[,] or even universally condemned,'" *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir.1983) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), but "whether the challenged aspects of the charge so infected the entire charge and trial as to cause the jury to evaluate petitioner's guilt or innocence under a standard less than 'beyond a reasonable doubt,'" *Bumpus v. Gunter*, 635 F.2d 907, 909 (1st Cir.1980).

Our conclusion, however, is that the challenged instructions did so infect the entire charge and trial. We also note that "the fact that a constitutional right is implicated permits reference to federal precedents for the determination ... of whether a violation occurred...." *Dunn v. Perrin*, 570 F.2d 21, 25 n. 7 (1st Cir. 1978).

The Supreme Court has substantially expanded the harmless error rule that it pronounced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), extending the principle to a wide variety of constitutional errors. *See, e.g., Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (improper instruction on malice); *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed. 2d 674 (1986) (failure to permit cross-examination on witness bias); *Rushen v. Spain*, 464 U.S. 114, 117–119, 104 S.Ct. 453, 455–456, 78 L.Ed.2d 267 (1983) (per curiam) (ex parte communication between trial judge and juror); *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed. 2d 96 (1983) (improper comment on defendant's failure to testify); *Milton v. Wainwright*, 407 U.S. 371, 377–378, 92 S.Ct. 2174, 2177–2178, 33 L.Ed.2d 1 (1972) (admission of confession obtained in violation of right to counsel). Indeed, in *Rose*, the Court indicated that it is the rare case in which harmless error analysis is not appropriate: "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis." 106 S.Ct. at 3106–3107.

Despite this broad statement, we understand the Court in *Rose* to imply that another error that might well trigger automatic reversal of a conviction is the absence of a proper reasonable doubt instruction. In footnote eight of that opinion, the Court contrasted an instruction that erroneously establishes a presumption in favor of the government—such as the malice instruction at issue in *Rose*—from an instruction that " 'prevent[s] a jury from considering an issue.' " The Court seemed to suggest that the former may be subject to harmless-error analysis while the latter should not be. In support of this proposition, the Court specifically cited to *Jackson v. Virginia*, 443 U.S. 307 n. 14, 99 S.Ct. 2781 n. 14, 61 L.Ed.2d 560 (1979), in which it had indicated in dictum that the failure to instruct a jury on the reasonable doubt standard cannot be harmless. *See also United Brotherhood of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 410, 67 S.Ct. 775, 783, 91 L.Ed. 973 (1947) ("[W]here the evidence against an accused charged with a crime is well-nigh conclusive and the court fails to give the reasonable-doubt instruction ... [i]t could not be said that the failure was harmless error.")

In addition, the Court's more general discussion about the kinds of errors that require automatic reversal suggests that a faulty reasonable doubt charge normally should be included within that category. The Court stated that harmless-error doctrine is inapplicable to those errors that "render a trial fundamentally unfair," 106 S.Ct. at 3106. It gave as examples introduction of a coerced confession, complete denial of right to counsel, and adjudication by a biased judge. The Court then added that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury ... 'regardless of how overwhelmingly the evidence may point in that direction.' " *Id.* 106 S.Ct. at 3106 (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 573, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977)).

For us to affirm petitioner's conviction despite the defective reasonable doubt charge—on the ground that we believe the evidence proves guilt beyond a reasonable doubt—would be to do the qualitative equivalent of directing a verdict for the prosecution. A reviewing court does not necessarily usurp the jury's role when it reviews the evidence to determine whether there is incontrovertible proof of one element of the crime, as the Supreme Court required of the Court of Appeals in *Rose*. But to say—without the benefit of the sights and sounds that can affect credibility determinations—that the sum total of what was presented adds up to proof of guilt beyond a reasonable doubt *is* to do the task assigned in our criminal justice system to a jury of the defendant's peers. *See Martin Linen Supply Co.*, 430 U.S. at 572, 97 S.Ct. at 1355 ("[I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction.")

We reserve this task for the jurors not because they are more capable than judges of reaching a mathematically precise conclusion about guilt or innocence, but because they bring a fresh and impartial perspective to the criminal justice system. "The purpose of a jury is ... to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge." *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 698, 42 L.Ed.2d 690 (1975). We tolerate even quixotic verdicts, and allow juries "to err upon the side of mercy," *Jackson v. Virginia*, 443 U.S. 307, 317 n. 10, 99 S.Ct. 2781, 2788 n. 10, 61 L.Ed.2d 560 (1979). *See id.* ("[T]he factfinder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of 'not guilty.'"). *See also Duncan v. Louisiana*, 391 U.S. 145, 157, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968) ("[W]hen juries differ with the result at which the judge would have arrived, it is usually because they are serving some of the very purposes for which they were created and for which they are now employed."). Although it may not be fundamentally unfair for judges to decide that the evidence in a given case demonstrates guilt beyond a reasonable doubt, it is certainly inconsistent with the concept of trial by a jury of one's peers.[8]

■ It is arguable that there will be some case in which the evidence is so compelling that no reasonable person possibly could reach a verdict of innocence. Perhaps this would be so if the government introduces a voluntary confession that is not challenged at trial by the defendant, who for some reason declined to plead guilty (though we express no opinion on this matter). But in this instance, where the Commonwealth's case rested substantially on the credibility of the alleged victim,[9] we cannot say that the errors in the reasonable doubt instruction were harmless beyond a reasonable doubt.

*The judgment of the district court is therefore affirmed.*

---

**8.** In *Commonwealth v. Garcia*, 379 Mass. 422, 442, 399 N.E.2d 460, 472–473 (1980), the Massachusetts Supreme Judicial Court held that an error in the reasonable doubt charge was harmless in light of the "overwhelming evidence of guilt." *Garcia* presents no unusual circumstances suggesting that the harmless error doctrine might have been appropriate in that situation, and we therefore disagree with the SJC's conclusion. We reiterate that federal law, not state law, governs our determination of matters relating to federal constitutional violations. *See supra* note 7. *See also Garcia*, 379 Mass. at 445–446, 399 N.E.2d 460 (dissenting opinion of Liacos, J.) (disagreeing that an erroneous charge on reasonable doubt can constitute harmless error).

**9.** Although the testimony of the victim, Neil Hirons, was detailed and substantiated in certain particulars by other witnesses, petitioner did not testify and the jurors therefore heard only the victim's account of the origins of the conflict between the two men.