COMMONWEALTH VS. ALPHONSO PINCKNEY.

Suffolk. November 9, 1994. - January 19, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Presumptions and burden of proof, Postconviction relief. *Words,* "Moral certainty."

Discussion of Federal and State cases considering the phrase "moral certainty" as it is used in jury instructions in criminal cases. [342-347]
At a murder trial, the judge's conflicting instructions to the jury with respect to the degree of certainty necessary to convict failed to accurately convey to the jury the meaning of reasonable doubt; a new trial was required. [345-349]

INDICTMENTS found and returned in the Superior Court on May 6, 1971.

A motion for a new trial, filed on May 9, 1991, was heard by *John J. Irwin, Jr.,* J.

*Kenneth J. King* for the defendant.

*Scott H. Kremer,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The sole issue in this appeal from the denial of the defendant's motion for new trial concerns the trial judge's instructions to the jury on the Commonwealth's burden of proving guilt beyond a reasonable doubt. We reverse the judge's denial of the defendant's motion and order a new trial.

The defendant was indicted in 1971 for murder in the first degree and rape. He was tried before a jury, found guilty and was sentenced in early 1972. The convictions were affirmed on direct appeal in 1973. *Commonwealth* v. *A Juvenile,* 364 Mass. 103 (1973) (vacated as to death penalty). In 1991, the defendant pro se filed his first motion for new trial, claiming a denial of a fair trial due to errors in the jury in-

structions and a failure to charge on the defendant's theory of the case. The motion was denied in the Superior Court, but a single justice of this court in 1993, pursuant to G. L. c. 278, § 33E (1992 ed.), allowed an appeal on the sole question "whether, in the circumstances of the entire case, the judge's charge on proof beyond a reasonable doubt was reversible error on the basis of principles of law that have been established since the date his appeal was argued."

In a criminal case, the Commonwealth must prove a defendant's guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. . . . Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " (Citation omitted.) *Victor* v. *Nebraska*, 114 S. Ct. 1239, 1243 (1994), quoting *Holland* v. *United States*, 348 U.S. 121, 140 (1954). When reviewing a jury instruction defining reasonable doubt, the constitutional question is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction on proof insufficient to meet the *Winship* standard." *Id*. A constitutionally deficient reasonable doubt instruction amounts to a structural error which defies analysis by harmless error standards. See *Sullivan* v. *Louisiana*, 508 U.S. 275, 280-282 (1993).

The defendant argues that the judge's use of the phrase "moral certainty" outside of the context of the *Webster* charge and in conjunction with language that shifted the burden of proof to the defendant amounted to reversible error. Since the date of the defendant's original appeal in 1973, the use of the phrase moral certainty has come under increasing scrutiny. See *Victor* v. *Nebraska, supra* at 1247-1248 & 1250-1251; *Cage* v. *Louisiana*, 498 U.S. 39, 41 (1990) (per curiam), rev'd on other grounds, *Estelle* v. *McGuire*, 502 U.S. 62 (1991); *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 571, cert. denied, 115 S. Ct. 753 (1995); *Lanigan* v. *Maloney*, 853 F.2d 40, 47-48 (1st Cir. 1988), cert. denied, 488 U.S. 1007 (1989). As case law regarding the constitu-

tionality of the phrase "moral certainty" in a reasonable doubt instruction developed after the date of the defendant's original appeal, and there were no other postconviction claims, we may properly consider this claim.[1] See *Commonwealth* v. *Ambers*, 397 Mass. 705, 708 (1986) (relevant inquiry under c. 278, § 33E, is whether legal basis for defendant's argument is sufficiently developed at time of appeal).

The use of the phrase moral certainty in a reasonable doubt instruction was first criticized by the Supreme Court of the United States in *Cage* v. *Louisiana, supra* at 41. In *Cage*, the Court reversed a defendant's conviction because of a flawed instruction on reasonable doubt. *Id.* The trial judge in that case had instructed the jury that reasonable doubt meant "such doubt as would give rise to a grave uncertainty" and "an actual substantial doubt." *Id.* at 40. The instruction also contained the sentence: "What is required is not an absolute or mathematical certainty, but a moral certainty." *Id.* The Court held that use of the phrase moral certainty, as opposed to "evidentiary certainty," in conjunction with the words "substantial doubt" and "grave uncertainty," words which suggest a higher degree of doubt than is required for acquittal, could have been interpreted by a reasonable juror to allow a finding of guilt based on a degree below that required by due process. *Id.* at 41.

The Supreme Court revisited the issue of the propriety of using the phrase moral certainty in a reasonable doubt in-

---

[1] As the "moral certainty language cannot be sequestered from its surroundings," *Victor* v. *Nebraska*, 114 S. Ct. 1239, 1248 (1994), we must consider whether the moral certainty language was used in a context which adequately stressed to the jury the high degree of certainty required before convicting a defendant. Although we agree with the Commonwealth that many of the errors in the jury instruction could have been raised at the time of the defendant's original appeal, we do not consider these errors as a basis for reversing the defendant's conviction. Rather, we consider the language in order to determine whether the context in which the moral certainty language was used adequately clarified the proper meaning of this phrase.

struction in *Victor* v. *Nebraska, supra*.[2] The Court held that, although the moral certainty language was ambiguous in the abstract, use of the phrase was not reversible error where it was used with an additional instruction which impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused.[3] *Id.* at 1247. The Court expressed concern, however, over the continued use of the phrase:

> "We do not think it reasonably likely that the jury understood the words moral certainty either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof. At the same time, however, we do not condone the use of the phrase. As modern dictionary definitions of moral certainty attest, the common meaning of the phrase has changed since it was used in the *Webster* instruction, and it may continue to do so to the point that it conflicts with the *Winship* standard."

*Id.* at 1248.

Consistent with the Supreme Court's decision in *Victor*, we have approved of the moral certainty language if used as a part of or in conjunction with the approved charge from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). *Commonwealth* v. *Beldotti*, 409 Mass. 553, 562 (1991). See *Lanigan* v. *Maloney, supra* at 47 n.4 (context of *Webster*

---

[2]The reasonable doubt instruction in *Victor* v. *Nebraska*, 114 S. Ct. 1239, 1244 (1994), closely resembled the *Webster* charge: "Reasonable doubt is defined as follows: It is *not a mere possible doubt*; because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge." *Id.*

[3]The judge in *Victor* instructed the jury that they were required to have "an abiding conviction, to a moral certainty, of the truth of the charge." The Court held the inclusion of the "abiding conviction" language tended to alleviate any concerns that the phrase moral certainty might be misunderstood.

charge lessens the potential for any harmful inferences to be drawn by jury). Even where a *Webster* charge is not given, we have upheld the use of the moral certainty language in a reasonable doubt instruction if it is linked with language that lends content to the phrase. See *Commonwealth* v. *Gagliardi, supra.* We have recognized, however, that the use of this language in isolation, without further explanation, might amount to an erroneous instruction on reasonable doubt. *Id.*

In *Commonwealth* v. *Gagliardi, supra,* we held that the use of the moral certainty phrase in a reasonable doubt instruction did not constitute error where, in each instance the phrase was used, the judge immediately expounded on that concept informing the jury of the high degree of certainty they must possess in order to convict a defendant. Unlike the charge in *Gagliardi,* the judge in this case did not use the phrase moral certainty in conjunction with language that stressed the high degree of certainty required to convict a defendant.[4]   Rather, following each use of the phrase, the judge gave conflicting formulations of the reasonable doubt standard. In light of the judge's use of the moral certainty

---

[4]The relevant portion of the judge's charge to the jury consists of the following:

> "Now, what do I mean when I say that the government must prove to you beyond a reasonable doubt that this defendant is guilty of the crimes charged? I can first say to you that it does not mean that the government must prove to you beyond all doubt, that the government is required to prove to you beyond a mathematical certainty that this defendant is guilty. If that standard of proof were required of the prosecution in any criminal case, there would rarely, if ever, be a conviction.

> "Proof beyond a reasonable doubt requires that a jury be satisfied of all of the facts necessary to convict to a *moral certainty.*

> "I can state it in another way: That any jury and any juror in any case *can find some doubt if he goes looking for doubt.* That type of doubt is the doubt that I refer to when I refer to reasonable doubt.

> "*Reasonable doubt is that type of a feeling of doubt* about the essential facts that an honest juror, honestly and earnestly seeking the truth, *finds abiding in his mind at the end of a full consideration of the facts of the case* and the law as given to you by the

language in conjunction with conflicting definitions of reasonable doubt, it is reasonably likely that the jury understood

Court. If such a doubt lingers in the minds of any one of you, then that doubt, of course, must be resolved in favor of the defendant.

"But, on the other hand, if you are satisfied to a *moral certainty and beyond any such doubt as I have just described*, then the government has sustained its burden.

"It is not enough that the government prove that it is more likely than not. That is a different standard of proof. The proof does require that you be satisfied beyond this doubt which would be a doubt which you could base on reason; and, again, as I say, in arriving at that process, you will use your intelligence and your common sense and your honest efforts and consideration as jurors.

"Again, I state that your job here is to seek and to find and to state the truth.

"Another judge at another time said much what I have just said, and I'd like to read from his [*Madeiros*] charge so that you may have it restated to you in another way:

" 'In a criminal case, in order to convict, the existence of a set of facts that under the law constitutes the defendant guilty of the crime charged must be proved, not merely by the preponderance of greater weight of the evidence, but beyond a reasonable doubt.

" 'Proof beyond a reasonable doubt does not mean beyond all doubt, nor beyond a whimsical or fanciful doubt, nor proof beyond the possibility of innocence. It is rarely if ever possible to find a case so clear that there cannot be a possibility of innocence. *If a reasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction*, practically every criminal would be set free to prey upon the community, and such a rule would be wholly impractical and would break down the forces of law and order and make the lawless supreme.

" 'A reasonable doubt does not mean such a doubt as may exist in the mind of a man who is earnestly seeking doubts or for an excuse to acquit a defendant, but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth.

" 'A fact is proved beyond a reasonable doubt when it is proved to a *moral certainty*, as distinguished from a mathematical or absolute certainty, when it is proved to a degree of certainty that satisfies the judgment and conscience of the jury as reasonable men and women and leaves in their mind as such a clear and settled conviction of guilt.

" 'But if, when all is said and done, there remains in the minds of a jury any reasonable doubt as to the existence of any fact which is

the instructions to allow conviction on a standard of proof lower than that required by due process.

The judge used the phrase moral certainty three times in the reasonable doubt instruction. The first two times, the phrase was used in isolation without further explanation as to the meaning of the phrase. Following the third use of the phrase, the judge included language which properly impressed upon the jury the need to reach a subjective state of near certitude of the guilt of the accused. The numerous inconsistencies that permeated the charge on the definition of reasonable doubt, however, undermined the effectiveness of this mitigating language.

The judge's first use of the moral certainty language was followed by an incorrect definition of reasonable doubt. The judge equated reasonable doubt with "some doubt" a juror can find "if he goes looking for doubt." Although this instruction may have had the effect of increasing the Commonwealth's burden, the incorrect instruction contributed to the potential confusion of the jurors. The judge then defined reasonable doubt as a doubt which a juror "finds abiding in his mind at the end of a full consideration of the facts of the case." Instead of requiring the Commonwealth to prove guilt, the jury could have interpreted this language as calling upon the defendant to establish doubt in the jurors' minds, thereby lowering the Commonwealth's burden of proof. See *Dunn* v. *Perrin*, 570 F.2d 21, 23-24 (1st Cir.), cert. denied, 437 U.S. 910 (1978).

Further confusion as to the correct standard of proof resulted from the judge's use of language based on the charge in *Commonwealth* v. *Madeiros*, 255 Mass. 304 (1926). The judge instructed the jury:

"Proof beyond a reasonable doubt does not mean beyond all doubt, nor beyond a whimsical or fanciful

essential to the guilt of the defendant on the particular charge, the defendant must have the benefit of it and cannot be found guilty of the charge.' " (Emphasis added.)

doubt, nor proof beyond the possibility of innocence. It is rarely if ever possible to find a case so clear that there cannot be a possibility of innocence. *If a reasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction,* practically every criminal would be set free to prey upon the community, and such a rule would be wholly impractical and would break down the forces of law and order and make the lawless supreme."

Although the use of the *Madeiros* charge was acceptable at the time of the defendant's direct appeal, the *Madeiros* language has since been criticized as warning the jury of holding the prosecution to too high a standard of proof. See *Commonwealth* v. *Sheline*, 391 Mass. 279, 295 (1984) (*Madeiros* charge criticized as inviting jurors' attention to general consequences of verdict rather than to obligation to decide case on evidence); *Commonwealth* v. *Tavares*, 385 Mass. 140, 148, cert. denied, 457 U.S. 1137 (1982) (emotional overtones of *Madeiros* rhetoric criticized as subtly encouraging a jury to accept less proof than it should so that "the lawless" will not be "supreme"). Exacerbating the potential danger of using the *Madeiros* charge, however, was the fact that the judge clearly misstated the law. There was a critical difference between the judge's charge in this case and the charge in *Madeiros*. In *Madeiros*, the charge read "if an *unreasonable* doubt or a mere possibility of innocence were sufficient to prevent a conviction," whereas in the present the judge instructed that "[i]f a *reasonable* doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community." With this statement, the judge clearly misstated the law and again gave an incorrect explanation as to the proper standard of proof. Having just instructed the jury that reasonable doubt would be insufficient to acquit the defendant, the judge went on to instruct properly that the jury must have a "clear and settled conviction of guilt" and that if there "remains . . . any reasonable doubt . . . the defendant . . . cannot be found guilty of the charge." "At worst, the

charge could well have led the jury to believe that the degree of certainty required to convict was far lower than that properly demanded in a criminal case. At a minimum, these instructions must have left the jury badly confused." *Commonwealth* v. *Wood*, 380 Mass. 545, 548 (1980).

Because the inconsistencies throughout the instruction failed adequately to lend meaning to the phrase moral certainty, we conclude that there was a reasonable likelihood that the jurors understood the reference to moral certainty to allow a conviction on a standard insufficient to satisfy due process. The moral certainty phrase in the defendant's instruction was used in conjunction with language that both overstated and understated the degree of certainty necessary to convict. The use of the moral certainty language, which potentially understated the degree of certainty required to convict, in conjunction with conflicting reasonable doubt definitions, inevitably lead us to the conclusion that the instruction failed to convey accurately to the jury the meaning of reasonable doubt.

Accordingly, the order denying the defendant's motion for new trial is reversed, and the case is remanded to the Superior Court for a new trial.

*So ordered.*