Neel, J.
The defendant Reese Williams, Jr. was convicted of first degree murder and his conviction was affirmed by the Supreme Judicial Court. The defendant now moves for a new trial based on claimed errors in the trial judge’s instructions to the jury and on a claim of ineffective assistance of counsel. For the reasons set forth below, the defendant’s motion for a new trial is denied.
BACKGROUND
The defendant was found guilty of murder in the first degree on May 16, 1973, and was sentenced to life imprisonment without parole. He filed a timely claim of appeal and a motion for a new trial, which was denied. The Supreme Judicial Court affirmed the judgment and denial of the motion for a new trial on June 11, 1979. Commonwealth v. Williams, 378 Mass. 217, (1979).
The Supreme Judicial Court considered six bases for appeal: (1) the racial composition of the venire; (2) pre-trial motions to suppress defendant’s statements; (3) the judge’s remarks and rulings; (4) the charge to the jury; (5) assistance of counsel; and (6) G.L.c. 278, §33E. The charge to the jury and assistance of counsel are the only issues raised in the current motion.
The defendant claimed that three errors in the instructions concerning reasonable doubt diluted the prosecution’s burden of proof.[1] The court concluded that the first and third claims did not “even raise the spectre of error.” Williams, 378 Mass. at 232. First, the court held that a single sentence in the charge referring to “determination[s] of some great significance in your own personal lives,” while not desirable, did not constitute error. Id. Next, the court held that the use of the term “moral certainty” was a proper definition of the Commonwealth’s burden. Id. at 232-33 (citing Commonwealth v. Watkins, 377 Mass. 385, 388 (1979)). It noted that emphasis on the necessity of *699 moral certainty “may overcome isolated inadequacies in an explanation of proof beyond a reasonable doubt.” Williams at 233 (citing Commonwealth v. Grace, 376 Mass. 499, 500-01 (1978)).
The court considered the second claim of error in more detail, and held that language concerning the public consequences of an unreasonably high burden of proof, apparently taken from Commonwealth v. Medeiros, 255 Mass. 304, 307 (1926), was not prejudicial per se and was not error in this particular case. Williams, 378 Mass. at 234-35. Much of the court’s discussion focused on the judge’s admonition that the jury deal firmly with serious crime. Id. at 234. This was not an inaccurate statement of the prosecution’s burden because the admonition applied only to persons “duly convicted beyond a reasonable doubt.” Id. Nor was it a prejudicial statement, taken in the context of the charge as a whole, because it was preceded by a similar admonition that “no innocent person be convicted or punished”; because the judge quoted approved language from Commonwealth v. Webster, 5 Cush. 295, 320 (1850); and because the rest of the charge “employed the unadorned phrases ‘reasonable doubt’ and ‘moral certainty.’ ” Id. at 234-35.
DISCUSSION
Standard of Review Under Mass.R.Crim.P. 30
A parly cannot raise in a motion for new trial, as a matter of right, an issue that could have been, but was not raised at the original trial. Commonwealth v. Johnson, 352 Mass. 311, 317 (1967). It is “the unbroken practice” of the courts not to examine the original trial for errors which might have been raised by exception at the trial. Commonwealth v. McLaughlin, 364 Mass. 211, 229 (1973) (citing Commonwealth v. Dascalakis, 246 Mass. 12, 24 (1923)). The trial judge has the discretion to review questions of law which could have been raised at trial or on direct appeal; however, that discretion should be “reserved for deserving situations” and should not be exercised routinely. Commonwealth v. Harrington, 379 Mass. 446, 449 (1980). The discretionary power to give relief from such a waiver “should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.” Id.
Mass.R.Crim.P. 30 (c)(2), 378 Mass. 901 (1979), provides that any grounds, including constitutional claims, not raised in a prior motion for a new trial, are waived unless those grounds could not have been raised in the prior motion. Commonwealth v. Deeran, 397 Mass. 136, 139 (1986). Waiver, in the procedural sense in which it is used here, is not measured against the “knowing and intelligent” standard but is merely a failure to assert an available claim in a prior proceeding. Deeran, 397 Mass. at 141-42. In this case, denial of the defendant’s previous motion for a new trial was upheld by the Supreme Judicial Court on June 11, 1979, less than one month before the effective date of Mass.R.Crim.P. 30. Therefore, the waiver provisions of Rule 30(c)(2) do not apply to the defendant’s previous motion. Mass.R.Crim.P. 1A, 378 Mass. at 843; Deeran, 397 Mass. at 139 n.3. The predecessor to Rule 30, G.L.c. 278, §29 (as amended through St. 1966, c. 301), does not contain a similar waiver provision; thus, it is possible that a motion judge had less discretion to decline to hear a motion under the old rules. However, the waiver principle was not an invention of Rule 30(c)(2); substantial discretion was recognized before its adoption, even in the absence of express language in the statute. See Harrington, 379 Mass. at 449 (discretion should not be exercised routinely to supplement appellate opportunities previously available but not recognized or exercised); see also Commonwealth v. Grace, 376 Mass. 499, 501 (1978) (exception to instruction was waived because not argued in original appeal).
While a motion for a new trial is usually a matter for the trial judge’s sound discretion, the judge has no discretion to deny a new trial when the original trial was infected with prejudicial constitutional error. Lannon v. Commonwealth, 379 Mass. 786, 788 (1980); Earl v. Commonwealth, 356 Mass. 181, 184 (1969). Similarly, absent waiver or bar, a motion judge may not refuse to reach the merits of a retroactive constitutional claim where the arguments could not reasonably have been raised in the earlier proceedings based on then-existing precedent. Commonwealth v. Huot, 380 Mass. 403, 406 (1980). However, at least when a previous motion for a new trial is decided after the adoption of Mass.R.Crim.P. 30(c)(2), 378 Mass. at 901, the motion judge may refuse to reach the merits of a constitutional claim if that claim was available at the time of the previous motion and was not raised in that motion. Deeran, 397 Mass. at 139 n.3.
A constitutional claim may be deemed to have been “available” prior to the actual decision that articulates the theory upon which it is based if the theory was sufficiently developed at the time of trial or appeal to afford the defendant a genuine opportunity to raise the claim. DeJoinville, 381 Mass. 246, 248 (1980). Lannon v. Commonwealth, 379 Mass. at 788. However, the courts will not require clairvoyance on the part of defense counsel. Commonwealth v. Stokes, 374 Mass. 583, 588 (1978). Where there are prior cases that “provide some guidance on the issue,” there still may be a finding that there was insufficient guidance to allow the defendant to raise his claim. DeJoinville, 381 Mass. at 251. Even where the constitutional theory has been clearly articulated prior to the failure to preserve an exception, the courts have exercised discretion to hear the merits if there was a sufficiently grievous miscarriage of justice. See Commonwealth v. Collins, 374 Mass. 596, 600 (1978) (burden of proof placed on defendant); Commonwealth v. Shelley, 374 Mass. 466, 470-71 (1978) (improper closing arguments striking impermissibly at the defendant’s sole defense).
*700 A motion for a new trial may be based on a claim of retroactive effect of a constitutional decision if the constitutional decision announced a “new rule” and the rule is “central to an accurate determination of innocence or guilt.” Commonwealth v. Bray, 407 Mass. 296, 303 (1990) (quoting Teague v. Lane, 489 U.S. 288, 313 (1989)). See also Teague, 489 U.S. at 311 (retroactive application reserved for “bedrock procedural elements” like right to counsel), reh’g denied, 490 U.S. 1031 (1989). A rule is a “new rule” if it was not dictated by prior precedent. Id. at 301; see, e.g., Commonwealth v. Figueroa, 413 Mass. 193, 202 (1992) (Stockhammer announced a “new rule” because it allowed access to victims’ records without a prior showing of particularized need).
Argument 1: The Reasonable Doubt Instruction
The defendant challenges the trial judge’s reasonable doubt instruction, based on recent decisions, particularly Commonwealth v. Pinckney, 419 Mass. 341 (1995), which criticize the use of the phrase “moral certainty.” The defendant cannot be viewed as having waived this issue because he did challenge this language in his previous motion for a new trial, at a time when the Supreme Judicial Court considered the use of the phrase “moral certainty” beneficial, and able to “overcome isolated inadequacies in an explanation of proof beyond a reasonable doubt.” See Williams, 378 Mass. at 217. The Supreme Judicial Court has given retroactive effect to the new interpretation of “moral certainty” in collateral attacks. Pinckney, 419 Mass. at 343. This court is therefore without discretion to deny the defendant a hearing on the merits of this issue. See Huot, 380 Mass. at 406.
The beyond a reasonable doubt standard is a requirement of due process; however, the Constitution does not require that any particular form of words be used in advising the jury of the government’s burden of proof, so long as the instructions, taken as a whole, correctly convey the concept. Victor v. Nebraska, 114 S.Ct. 1239, 1243 (1994). When a reasonable doubt instruction is challenged, the federal constitutional question is whether there is a “reasonable likelihood” that the instruction was applied in an unconstitutional manner. Id. But see Sullivan v. Louisiana, 113 S.Ct. 2078, 2081 (1993) (the inquiry is whether the guilty verdict was “surely unattributable” to the error). In Commonwealth v. Rosa, 422 Mass. 18, 27 & n.10, however, the Supreme Judicial Court set a lower standard, i.e., “whether a reasonable juror could have used the instruction incorrectly.” Where a reasonable doubt instruction has been held to be defective, due process and the right to a jury trial require that the verdict be vacated without consideration of whether the defect might have been harmless error. Sullivan at 2082.
The continued use of the phrase “moral certainty” to describe reasonable doubt has been criticized by the United States Supreme Court because, due to changes in the common meaning of the phrase, “a jury might understand the phrase to mean something less than the very high level of probability required by the Constitution in criminal cases.” Victor, 114 S.Ct. at 1246-47. The phrase “moral certainty” maybe used in a reasonable doubt instruction if it is used as part of or in conjunction with the approved charge from Commonwealth v. Webster, 5 Cush. at 320; Pinckney, 419 Mass. at 344. It may also be used where a Webster charge is not given if, “in each instance the phrase [is] used, the judge immediately expound[s] on that concept informing the jury of the high degree of certainty they must possess in order to convict.” Id. at 345; Commonwealth v. Gagliardi, 418 Mass. 562, 571 (1994), cert. denied, 115 S.Ct. 753 (1995). However, it may not be used if the instructions to the jury do not provide a sufficient context to lend meaning to the phrase. Victor, 114 S.Ct. at 1250. If the phrase is used in isolation, without further explanation, then it could result in erroneous instruction on reasonable doubt. Pinckney, 419 Mass. at 345; Gagliardi, 418 Mass. at 571. If the phrase is used as part of an instruction that contains an otherwise inconsistent or erroneous definition of reasonable doubt, then there is an increased likelihood that the jury could understand the reference to “moral certainty" to allow a conviction on a standard insufficient to satisfy due process, even if some of the inconsistencies have the effect of increasing rather than decreasing the Commonwealth’s burden of proof. Pinckney, 419 Mass. at 345-347, 349; see also Cage v. Louisiana, 498 U.S. 39, 41 (1990) (“grave uncertainty” and “actual substantial doubt” combined with “moral certainty”).
In Cage, the reasonable doubt instruction contained a single reference to the phrase “moral certainty” in a sentence that contrasted moral certainty with “absolute or mathematical certainty.” Id. at 40. However, the instruction also defined reasonable doubt as “an actual substantial doubt” giving rise to “grave uncertainty,” phrases that the Court found to be an overstatement of the degree of doubt necessary for acquittal. Id. Reference to “moral certainty,” rather than “evidentiary certainty,” in the context of these other errors, resulted in an erroneous reasonable doubt instruction because it could have led a reasonable juror to find guilt based on an insufficient degree of proof. Id. at 41. But see Victor, 114 S.Ct. at 1250 (the problem in Cage was that the rest of the instruction provided insufficient context to lend meaning to the phrase).
In Pinckney, the reasonable doubt instruction referred to the phrase “moral certainty” three times. 419 Mass. at 347. The first two references were in isolation, without further explanation. Id. The third reference was in a sentence that properly defined the need to reach a subjective state of near certitude by elaborating on the phrase “moral certainty" as a state of certainty that “satisfies the judgment and conscience of the jury” and “leaves ... a clear and settled convic *701 tion.” Id at 346-47 n.4, 347. However, the instruction also contained four errors. Id. at 347-48. First, the judge equated reasonable doubt as that doubt any juror could find “if he goes looking for doubt,” which increased the Commonwealth’s burden. Id. at 347. Next, the judge defined reasonable doubt as a doubt a juror “finds abiding in his mind at the end of a full consideration of the facts,” which decreased the Commonwealth’s burden by calling upon the defendant to establish doubt in the jurors’ minds. Id. Next, the judge included language based on the charge in Commonwealth v. Madeiros, 255 Mass. at 307, that warned the jurors of the consequences to the public of holding the prosecution to too high a standard of proof. Pinckney, 419 Mass. at 347-48. Finally, the judge misquoted the Madeiros language by substituting “a reasonable doubt or a mere possibility of innocence” for “an unreasonable doubt or a mere possibility of innocence.” Id. at 348. The court ordered a new trial because the inconsistencies and errors must have left the jurors badly confused and could have led the jury to understand the reference to moral certainty to allow a conviction on an insufficient standard of proof. Id. at 349.
In Victor, the court considered reasonable doubt instructions from two cases, each of which contained a single reference to the phrase “an abiding conviction, to a moral certainty.” 114 S.Ct. at 1244, 1249. In both cases, the court rejected the defendant’s claims that there were other errors in the instruction. Id. at 1247, 1249, 1251 (“moral evidence” unproblematic; “substantial doubt” not erroneous if not combined with “grave uncertainty”; “strong possibilities” offset by “reasonable doubt” in same sentence). The use of the phrase “moral certainly” was not erroneous because the term “abiding conviction,” without reference to moral certainty, correctly states the government’s burden of proof and, therefore, removes the ambiguity that is associated with the phrase “moral certainty” when it is used without further explanation. Id. at 1247.
In Gagliardi, the court upheld a reasonable doubt instruction that used the words “moral certainty” four times, twice distinguishing the concept from “absolute certainty” and twice in the phrase “to a reasonable and moral certainty.” 418 Mass. at 568 n.3. The court found that the instruction did not equate “reasonable doubt” with “moral certainly,” because the “reasonable and moral certainty ” language applied to the proof of facts and because the phrase “reasonable doubt” came in the context of explaining “proof beyond a reasonable doubt.” Id. at 571 n.4. The instruction, considered as a whole, was not erroneous because the judge clearly informed the jurors of the Commonwealth’s burden of proof and because, in each instance in which the phrase “moral certainty” was used, the judge immediately expounded upon the concept, informing the jury of the high degree of certainly needed to convict the defendant. Id. at 571-72.
In the defendant’s case, the judge use the phrase “moral certainty” fourteen times, seven in the reasonable doubt instruction and seven in the summary of the charge. The relatively large number of instances in which the phrase was used raises concerns that the overall effect could be inconsistent and confusing. See Pinckney, 419 Mass. at 349. The court will therefore examine the use of this phrase, as well as the rest of the charge, with greater scrutiny than if the charge contained a smaller number of references. The principal issue is whether the use of the phrase “moral certainty,” particularly in the summary portion of the charge, is itself constitutionally defective. See Gagliardi, 418 Mass. at 571 (“use of the term ‘moral certainty’ in isolation without further explanation might amount to an erroneous instruction on reasonable doubt,” citing Victor, supra at 1245-48; the court later implies that it would be improper to equate “reasonable doubt” to “a degree of moral certainty,” but notes with approval trial judge’s equating “a fact proved beyond a reasonable doubt” with “moral cer-tainiy,” and his “use of the term ‘moral certainty’ . . . in the context of explaining ‘proof beyond a reasonable doubt.’ ” Id. at n.4 (emphasis in original)).
The trial judge defines reasonable doubt at pages 785-89 of the transcript.[2] While the instruction contains certain elements since criticized by the appellate courts, taken as a whole it adequately instructed the jurors both on the standard of reasonable doubt, and on the Commonwealth’s burden.
The trial judge begins by defining “proof beyond a reasonable doubt” as “proof to a moral certainty,” and then distinguishes moral certainty from mathematical certainty, and proof beyond a reasonable doubt from proof beyond whimsical or fanciful doubt, or proof beyond all possibility of innocence. Tr. at 786. This is substantially similar to a portion of the charge approved in Gagliardi, supra, and previously in Commonwealth v. Little, 384 Mass. 262, 266-67 & nn. 4 & 5 (1981). Gagliardi, supra at 568 n.3. It does not equate reasonable doubt with a degree of moral certainty; rather, it equates proof beyond a reasonable doubt with moral certainty. Id. at 571 & n.4.
The trial judge in this case borrowed also from the charge in Commonwealth v. Madeiros, 255 Mass. 304 (1926), in particular where he next instructs the jury that if the standard were proof beyond all possibility of innocence, “virtually all criminals would go free and the administration of justice . . . would be impossible. If an unreasonable doubt or mere possibility of innocence should be deemed enough to prevent conviction in this or in any case, practically every criminal would be free.” Tr. at 786. While this language is criticized in Pinckney, supra, the judge here did not make the mistake which rendered the Pinckney charge an incorrect explanation of the proper standard of proof. *702 Pinckney, supra at 348. In the context of an otherwise proper charge on reasonable doubt, the Madeiros language is not fatal.
The next portion of the judge’s definition of reasonable doubt repeats the distinction between moral certainty and “absolute or mathematical certainty,” Tr. at 786, then immediately informs the jurors that the required degree of certainty is that which “satisfies the judgment and conscience of you ladies and gentlemen of the jury as reasonable men and women and leaves in your minds as reasonable men and women a settled conviction of guilt. . .” Tr. at 786-87. That explanation of moral certainty adequately instructs the jurors as to the level of certainty required for conviction. It is followed by a statement that “any reasonable doubt of the existence of any fact. . . which is essential to the proof of guilt of this defendant” requires acquittal. Tr. at 787.
The judge next bolsters the reasonable doubt instruction by quoting the Webster definition, including the statement of reasonable doubt as “that state of the case which . . . leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.” Tr. at. 787. The use of Webster is significant. The Supreme Judicial Court notes in Pinckney that, “[cjonsistent with the Supreme Court’s decision in Victor, we have approved of the moral certainty language if used as a part of or in conjunction with the approved charge from [Webster]." Pinckney, supra at 344, citing, inter alia, Lanigan v. Maloney, 853 F.2d 40, 47 n.4 (1st Cir. 1988) (context of Webster charge lessens the potential for any harmful inferences to be drawn by jury). The Supreme Judicial Court contrasts a case such as Gagliardi, supra, where the Webster charge was not given but where the use of the moral certainty language in a reasonable doubt instruction will be approved “if it is linked with language that lends content to the phrase.” Pinckney, supra at 345.
Just following the Webster charge, the judge adds the example of “a certainty which you would like to have reached, all of you, when you make a determination of some great significance in your own personal lives. That is the type of certainty which you should reach, a moral certainty.” Tr. at 788. This type of comment, without specific examples from jurors’ lives, has been criticized, but is not erroneous per se, Commonwealth v. Garcia, 379 Mass. 422, 440 (1980). In the context of the instructions in this case, the Court does not agree with defendant’s contention that it “probably destroyed the effect” of the otherwise proper Webster instruction.
The judge ends the instruction on reasonable doubt by stating that the jurors must ask themselves whether the evidence establishes “beyond a reasonable doubt such facts as in their turn show to the same degree of certainty, that is to say, a moral certainty” that the defendant committed the alleged crime (emphasis added), and concludes: “if this is not shown, he is to be acquitted. If it is shown, he is to be convicted. The defendant’s right to hold the Government to the strictest of proof is an absolute right,” not to be relaxed by considerations of public safety, “righteous indignation,” “atrocity of crime,” or “zeal for the suppression of crime.” Tr. at 788-89.
After giving the reasonable doubt definition just discussed, the judge instructs the jury on murder, manslaughter, and consciousness of guilt. Tr. at 789-800. Next the judge reviews the evidence pertinent to the murder charge against defendant, and, in the course of that review, adverts several times to the standard of proof. The first instance appears at Tr. at 801, where the judge states:
[T]he sole question for your determination here is, have you been convinced beyond a reasonable doubt that this man Williams participated with Adams in the killing of Filios. If you have a reasonable doubt that he participated with Adams, then you shall acquit him. If you have been convinced to a moral certainty that he participated ... in the killing . . ., then you shall find him guilty ... If the two acted together and you are convinced of it beyond a reasonable doubt, then you will find him guilty. If you have a reasonable doubt that he participated with Adams, then you will acquit him.
The instruction quoted recalls the judge’s initial definition of proof beyond a reasonable doubt as “proof to a moral certainty,” Tr. at 786, and provides the jury a sufficient reminder of the high standard necessary for conviction.
Shortly after giving the instruction quoted above, the judge repeats that, “(o]f course, if you have a reasonable doubt of Williams’ participation in this crime, you must acquit him.” Tr. at 802. His next mention of reasonable doubt appears at Tr. at 803, where he instructs the jury, “(t]he sole question here is, have you been convinced beyond a reasonable doubt, to a moral certainly” that Williams participated in the crime. The judge poses the following choices:
If you find and you are satisfied to a moral certainty that he did, if you find and you are satisfied to a moral certainty that he did participate with Adams, Williams on the theory of concert of action must be found guilty. If you have a reasonable doubt that Williams participated in the commission of these crimes, if you have a reasonable doubt that he did not know Adams, or did not join with Adams[3] or participate with Adams in the commission of these crimes, then of course you will acquit him.
Weigh all the evidence before you, the testimony, the material exhibits, and having done so you will unanimously reach your verdict. If you have a reasonable doubt as to his participation, you will acquit him. If you are convinced to a moral certainty of his participation in the crime, and therefore, of his guilt, you shall find him guilty.
*703 Tr. at 804. And again, Tr. at 806-07:
This case admits itself of the following verdicts:
If after your consideration of all the evidence there lurks in your minds’ eye a reasonable doubt that Williams participated in the commission of the crime of murder with Adams, then you shall find him not guilty.
If, on the other hand, you have reached a point in your unanimous minds’ eye where you have been convinced to a moral certainty, and beyond a reasonable doubt, that this defendant Williams did participate in the commission of the crime ..., then you shall find him guiliy.
Finally, Tr. at 808:
For emphasis I repeat: If you have unanimously a reasonable doubt, you shall acquit ... If, on the other hand, you have been convinced to a moral certainty of guilt and have determined the degree of murder, then, Mr. Foreman, you shall answer with the single word “guilty” . . .
In the context of the judge’s earlier valid definition of proof beyond a reasonable doubt, including his reliance on the Webster charge, Tr. at 785-89, together with his repeated references to the appropriate level of proof in the beginning of his summary of the evidence and the law, Tr. at 801-03,1 conclude that any failure fully to repeat explanatory language after references to “moral certainty” in the repetitious summary statements at the end of the judge’s charge does not overwhelm the impact of the earlier valid instructions on reasonable doubt, and that the charge, taken as a whole, could not have led a reasonable juror to apply the wrong standard or use the instructions incorrectly. There was no error.
Argument 2: The Consciousness of Guilt Instruction
The defendant challenges the trial judge’s consciousness of guilt instruction based on three grounds: (1) the jury was not instructed that it could not convict solely on the basis of such evidence, (2) the jury was not instructed that feelings of guilt are sometimes present in innocent persons, and (3) the evidence did not warrant an instruction on consciousness of guilt. The first and third grounds were not raised in the defendant’s previous motion for a new trial, in which the defendant was represented by the same counsel as he is in this motion. Since those grounds were available to the defendant at the time of the previous motion, they have been waived and cannot be asserted as of right. See Deeran, 397 Mass. at 139. The second ground is based on Commonwealth v. Toney, 385 Mass. 575, 585 n.6 (1982), decided after the defendant’s previous motion for a new trial. The question of whether the defendant has waived this ground depends upon whether the holding in Toney was sufficiently foreshadowed by previous decisions to afford the defendant a genuine opportunity to raise the claim. See DeJoinville, 381 Mass. at 248.
In Toney, the court bases its comments about feelings of guilt being present in innocent persons on Miller v. United States, 320 F.2d 767, 770-73 (D.C. Cir 1963). In Miller, the court explicitly suggested that judges instruct juries that “feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt.” 320 F.2 d. at 773. While there are no Massachusetts cases prior to Toney that refer to Miller, it cannot be said that raising this issue at trial or in the previous motion for a new trial would have required clairvoyance on the part of counsel. See Stokes, 374 Mass. at 588. This issue has, therefore, been waived. See id. In light of counsel’s previous failure to object to the other, arguably more serious, defects in the consciousness of guilt instruction, this court declines to exercise discretion to hear the merits of the Toney claim. See McLaughlin, 364 Mass. at 229; see also Harrington, 379 Mass. at 449 (discretion should be reserved for deserving situations and extraordinary cases).
Argument 3: The Malice Instruction
The defendant challenges the trial judge’s malice instruction, citing Commonwealth v. Fordham, 417 Mass. 10, 21 (1994). Neither the defendant’s memorandum nor the Fordham decision itself indicate that this claim was unavailable to the defendant, either at the time of his trial or at the time of his previous motion for a new trial. This claim has, therefore, been waived. See Deeran, 397 Mass. at 139. In light of the Supreme Judicial Court’s previous review of the murder instruction and the absence of any new facts or previously unavailable theory of law, this court will not depart from the “unbroken practice” of not considering issues that have been waived and therefore, declines to consider the merits of this claim. See Fogarty, 406 Mass. 103, 107 (1989); McLaughlin, 364 Mass. at 229; see also Harrington, 379 Mass. at 449.
Argument 4: Ineffective Assistance of Counsel
The defendant’s first claim is that trial counsel's failure to object to the reasonable doubt instruction constituted ineffective assistance of counsel. Because the theory under which the defendant challenges the reasonable doubt instruction was not available at the time of trial, this claim is without merit. See Commonwealth v. Fuller, 394 Mass. 251, 256 (1985) (there must be a loss of an otherwise available, substantial ground of defense).
The defendant’s second claim is that trial counsel's failure to object to the malice instruction constituted ineffective assistance of counsel. Defendant had an opportunity to raise this objection during his appeal and previous motion for a new trial, and failed to do so. McLaughlin, 364 Mass. at 229. This claim has, therefore, been waived, and I decline to consider it on the merits. See Harrington, 379 Mass. at 449.
*704 ORDER
For the reasons stated above, it is hereby ORDERED that defendant’s motion for a new trial pursuant to Mass.R.Crim.P. 30 is DENIED.

“(1) [W]hen explaining the phrase ‘proof beyond a reasonable doubt,’ the judge analogized to personal decisions in the lives of the jurors; (2) he admonished the jury to deal ‘firmly’ with crime or else ‘the revengeful, the lawless and the wicked may come to believe that murder may be committed without certainty of punishment, and human life would indeed then become cheap’; he also warned that ‘practically every criminal would be free’ if the prosecution were required to prove guilt beyond a mere possibility of innocence or beyond all doubt; and (3) he equated reasonable certainty with moral certainty.’’ Williams, 378 Mass. at 232.

“What then is proof beyond a reasonable doubt, you may ask. In all criminal cases the defendant is entitled to have a verdict of not guilty rendered unless the Commonwealth proves to a degree of certainty which is expressed by the phrase ’’beyond a reasonable doubt," the existence of a state of facts that under the law constitutes the defendant’s guilt of the crime charged.
Proof beyond a reasonable doubt, Mr. Foreman, ladies and gentlemen of the jury, means proof to a moral certainty. This does not mean proof to a mathematically accurate certainty, it means proof to a moral certainty. Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor does it mean proof beyond a whimsical or fanciful doubt, nor does it mean proof beyond all possibility of innocence. If the rule of law were that proof beyond a reasonable doubt meant proof beyond all possibility of innocence, virtually all criminals would go free and the administration of justice in the Courts of this Commonwealth and elsewhere would be impossible. If an unreasonable doubt or mere possibility of innocence should be deemed enough to prevent conviction in this or in any case, practically every criminal would be free. Such a rule would be wholly absurd.
A fact is proved beyond a reasonable doubt when it is proved to a moral certainty as distinguished from an absolute or mathematical certainly. When it is proved to a certainty, that degree of certainty that satisfies the judgment and conscience of you ladies and gentlemen of the jury as reasonable men and women and leaves in your mind as reasonable men and women a settled conviction of guilt, but if when all is said and done there remains in the mind of you jurors any reasonable doubt of the existence of any fact or facts which is essential to the proof of guilt of this defendant, the defendant must have the benefit of it and he cannot be found guiliy upon the charge.
Now here is a definition of reasonable doubt which was given one hundred twenty years ago, and I shall read it to you.
It is not mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge. All presumptions of law independent of evidence are in favor of innocence, and every person is presumed to be innocent until he is proven guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the fact to a reasonable and to a moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and the judgment of those who are bound to act conscientiously upon it, a certainly which you would like to have reached, all of you, when you make a determination of some great significance in your own personal lives. That is the type of certainty which you should reach, a moral certainty.
You must ask yourselves, now, does the evidence which you have heard here establish beyond a reasonable doubt such facts as in their turn show to the same degree of certainly, that is to say, a moral certainty that the defendant did unlawfully participate in the taking of the life of Andrew Fillios. If this is not shown, he is to be acquitted. If it is shown, he is to be convicted. The defendant’s right to hold the Government to the strictest of proof is an absolute right. No consideration of public safety, no righteous indignation, no atrocity of crime or zeal for the suppression of crime can give to the Court or to you jurors the reason to relax the rule of law or to explain the evidence to any conclusion not warranted by fair and convincing forces. I should fail in my duly if I did not with equal emphasis remind you that the communiiy is not safer if only the rights of those charged with crime are recognized and guarded. The right of the Commonwealth to have a verdict commensurate with its proof is as absolute and is as sacred as the right of the defendant’s in this case that, it shall not have more."

Instructing the jurors that they must acquit if they reasonably doubt that defendant “did not know Adams” or “did not join with Adams or participate with Adams” (emphasis supplied), just after instructing them to acquit if they reasonably doubt that defendant “participated” in the crimes, appears to be a misstatement on the judge’s part. This court concludes that, in context, it could not have caused such confusion in the minds of reasonable jurors as to have misled them on the proper standard of proof.